CITY OF ATHENS, APPELLEE, *v.* WOLF, APPELLANT.

(No. 73-526—Decided June 19, 1974.)

238

*Mr. Michael Nolan,* prosecuting attorney, and *Mr. Michael Ward,* for appellee.

*Mr. Alan I. Goodman,* for appellant.

STERN, J. The key question presented by appellant's motion to suppress is whether Officer Hutchin's original entry into Room 317 was lawful.

The Fourth Amendment to the United States Constitution insures the right of people to be secure in their persons, houses, papers and effects, free from unreasonable searches and seizures. All evidence obtained by searches in violation of the Fourth Amendment is inadmissible in state courts. *Mapp* v. *Ohio* (1961), 367 U. S. 643. Searches conducted outside the judicial process, without a warrant, are per se unreasonable, subject to a few specifically established exceptions. *Katz* v. *United States* (1967), 389 U. S. 347, 357, and cases cited therein.

To apply the above authorities to the present case we must make a series of preliminary determinations: (1) Was appellant, in his dormitory room, entitled to Fourth Amendment protection? (2) Was Officer Hutchin's intrusion into Room 317 tantamount to a search thereof? (3) If so, has the state carried its burden of showing that the officer's search falls within an exception to the Fourth Amendment's requirement of a warrant?

In *Katz* v. *United States,* at pages 351 and 353, the Supreme Court had occasion to discuss the scope of protection afforded by the Fourth Amendment, as follows:

"* * * the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. * * *."

"* * *

"* * * The government's activities in electronically listening to and recording petitioner's words *violated the privacy upon which he justifiably relied* * * * *and thus constituted a 'search and seizure'* within the meaning of the Fourth Amendment." (Emphasis added.)

Although few people who have ever resided in a college dormitory would favorably compare those living quarters to the comfort of a private home, a dormitory room is "home" to large numbers of students who attend universities in this state. Because of the very nature of dormitory life, privacy is a commodity hard to come by, however much desired. Here, appellant shared his room with another student, and shared a common bathroom with other residents of the suite. Officer Hutchins testified that the door from appellant's room into the bathroom was open.[2]

Under the circumstance, that fact can hardly be construed as an invitation to the general public to enter unannounced and at will. Appellant is entitled to more than a modicum of privacy in his dormitory room. As regards intrusions by law enforcement officials, we hold that appellant is entitled to Fourth Amendment protection. See *Piazzola* v. *Watkins* (C. A. 5, 1971), 442 F. 2d 284.

Throughout its brief the city refrains from characterizing Officer Hutchin's initial entry into Room 317 as a search. Because the officer's intrusion did directly impinge upon appellant's reasonable expectations of privacy in his room, and because this intrusion culminated in the seizure of evidence later used to convict appellant, we hold that a warrantless search and seizure within the ambit of the Fourth Amendment did occur.

The city argues that, under the "plain-view" doctrine,

---

[2]During the pre-trial suppression hearing Ronny Yu, appellant's roommate, testified that he and appellant were not friendly with the occupants of Room 318, and that the door leading to the common bathroom was generally kept closed. Charles Roseman, the friend of appellant who was in Room 317 when Officer Hutchins first entered, testified unequivocally that the bathroom door was closed, and that he heard nothing transpiring in Room 318 prior to the officer's entry. Since, however, the trial court specifically found the bathroom door to be open as Officer Hutchins testified, we accept that version of the facts.

Officer Hutchins was justified in seizing the pipe which appellant was holding. This contention misconstrues the legal basis for the plain-view theory. In *Coolidge* v. *New Hampshire* (1971), 403 U. S. 443, 465, the United States Supreme Court said:

"It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal."

As stated in *Harris* v. *United States* (1968), 390 U. S. 234, 236: "* * * It has been long settled that objects falling in the plain view of an officer *who has a right to be in the position to have that view* are subject to seizure and may be introduced in evidence." (Emphasis added.)

In this case, Officer Hutchins was unable to see anyone in Room 317 merely by looking, from the bathroom, through the open door into that room. It was not until he was physically within Room 317 that appellant and his visiting friend were visible. Thus the plain-view doctrine is inapplicable here, where the lawfulness of the officer's intrusion itself is at issue.[3]

That brings us to the third, and most important, of our preliminary determinations. The city had the burden of showing, by at least a preponderance of the evidence, that the search of appellant's room fits within one of the defined exceptions to the Fourth Amendment's requirement of a warrant. *Chimel* v. *California* (1969), 395 U. S. 752, 761; *Lego* v. *Twomey* (1972), 404 U. S. 477, 488. The thrust

[3]A different question would be presented if the officer would have been able to observe appellant without physically entering Room 317. In that case, the plain-view doctrine would, arguably, be applicable. We say *arguably* because, according to Officer Hutchins, even when he first observed appellant, he had no idea what the object was before it was quickly concealed.

of the city's argument is that Officer Hutchins was acting reasonably to protect himself, and the other officers, by securing the immediate area of a drug raid. Cited as authority for this contention are *Terry* v. *Ohio* (1968), 392 U. S. 1: *Preston* v. *United States* (1964), 376 U. S. 364; *United States* v. *Berryhill* (C. A. 9, 1971), 445 F. 2d 1189; *United States* v. *Miller* (C. A. D. C., 1970), 449 F. 2d 974; *State* v. *Toliver* (1971), 5 Wash. App. 321, 487 P. 2d 264; *People* v. *Pugh* (1966), 69 Ill. App. 2d 312, 217 N. E. 2d 557. To these cases we would add *United States* v. *Looney* (C. A. 5, 1973), 481 F. 2d 31; *United States* v. *Briddle* (C. A. 8, 1970), 436 F. 2d 4; and *United States* v. *Broomfield* (E. D. Mich., 1972), 336 F. Supp. 179.

All the above-cited cases are concerned, to some degree, with the actions that a law enforcement official might reasonably take to protect himself from potential physical harm, but none is persuasive authority for the city's contention here. Having read the testimony of Officer Hutchins and Sergeant Beasly at the suppression hearing, we are convinced that the drug raid on Room 318 was executed quickly and well. All occupants in that room were taken by surprise, and offered no resistance whatsoever. Officer Hutchins entered the bathroom at Sergeant Beasly's direction "to make sure nothing was disposed of or anybody got into the bathroom." The sergeant was familiar with the layout of Bromley Hall, and his primary purpose in "securing" the bathroom was to insure that no drugs would be covertly disposed of. Officer Hutchins, however, walked directly through the bathroom without stopping to examine the sinks, shower, toilet, or medicine cabinets, and into Room 317. Although we do not doubt the officer's good faith[4] in entering Room 317, we cannot say that his moti-

---

[4]Officer Hutchins testified that he was unfamiliar with the layout of rooms in Bromley Hall and that, at first, he thought Room 317 was a part of Room 318. Once in 317, the officer noticed that it was more orderly than Room 318, but did not attribute to this fact any particular significance. It was not until later, when Officer Hutchins observed the room number on the door leading to the hallway, that he realized Room 317 was a distinct living unit.

vation for doing so was reasonably related to protection of himself or others from an objectively recognizable threat of imminent harm.

In its brief, the city suggests the following:

" * * * Assume that Hutchins is in the bathroom to execute the search warrant and to secure the premises, he then looks through an open door into another room not knowing if the room is part of room 318 and not knowing who or what may be in the room waiting for him."

We respond by saying two things, First, it is reasonable to expect an officer executing a search warrant under these circumstances to be aware that Room 318 is but one of two separate, and independent rooms in a dormitory suite. Second, since Room 317 is a separate and independent room whose occupants are completely unrelated to those in Room 318, absent some perceived and tangible threat emanating from 317, an officer's general fear of the unknown is objectively insufficient to justify intrusion.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'Neill, C. J., Herbert, Corrigan, Celebrezze, W. Brown and P. Brown, JJ., concur.