OPINION
Defendant, Michael Nixon, appeals from his conviction and sentence for possession of crack cocaine., Defendant was indicted on one count of possession of crack cocaine. R.C. 2925.11(A). Prior to trial Defendant moved to suppress the drugs that form the basis for the charge. Following a hearing, the trial court overruled Defendant's motion to suppress. Defendant entered a no contest plea to the possession charge, was found guilty, and was sentenced by the trial court to five years of community control sanctions., Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS WHEN THE POLICE SEIZED DEFENDANT IN VIOLATION OF HIS FOURTH AMENDMENT RIGHTS.
The evidence presented at the suppression hearing demonstrates that at approximately 4:50 a.m. on May 16, 2001, Dayton police officers Orick and Anderson were in a marked cruiser patrolling the area near 865 North Main Street. This is the address of "Chicken Louie's," a restaurant. The restaurant was not yet open for business.
As the officers approached Chicken Louie's they saw a man hiding behind the air conditioning units in the parking lot at the rear of the restaurant. The officers also observed a car which appeared to have no occupants parked in that lot. As the officers continued down the street, they saw the individual move about to keep the air conditioning units between himself and the officers.
Officer Orick had made numerous arrests in this area and described it as a "high crime, high drug" area. In the preceding months there had been several robberies in this general area, including one at Chicken Louie's. With this in mind, Officer Orick decided to investigate what the man they saw was up to.
The officers turned into Chicken Louie's parking lot, turned a spotlight on the subject, and asked him what he was doing. The suspect, later identified as Cory Brown, replied, "nothing," and then gave police a false name. Brown told the officers that he was there with his friends, waiting for the restaurant to open, and he pointed toward the car in the parking lot that the officers thought was empty.
While Officer Anderson detained Brown, Officer Orick approached the car in the lot. He was surprised to see three individuals in the car who were crouched down low in the seats. Officer Orick was concerned about his safety and that of Officer Anderson, in view of the time of day, the area involved, the fact that the restaurant was not open, and the fact that the people inside the car were slouched down very low in the seats. Officer Orick asked Defendant Nixon, the driver of the vehicle, to identify the man hiding behind the air conditioning units. Defendant identified that man as Cory Brown, which was not the name that Brown had given to police. Officer Orick then called for back-up to assist in investigating what was going on.
As additional police crews began arriving, Defendant exited the vehicle and began walking quickly away from the scene. Officer Orick stopped Defendant and asked him for identification, which Defendant produced. Because there were still two suspects inside the car, Officer Orick put Defendant's identification in his pocket without looking at it.
Officer Orick patted Defendant down for weapons, and then placed Defendant inside the police cruiser driven by Officer Sullivan, one of the back-up officers who had just arrived. Officer Orick gave Defendant's identification to Officer Sullivan who conducted a field interview of Defendant to determine what the suspects were doing at the rear of the restaurant. The other suspects were removed from the vehicle and officers also conducted field interviews of those individuals.
After concluding his field interview with Defendant, and having been notified by the police dispatcher to respond to a different location, Officer Sullivan opened the rear door and let Defendant out of the cruiser. When Officer Sullivan then checked the back seat for contraband, as is his practice, he discovered what appeared to be crack cocaine. Officer Sullivan then arrested Defendant for possession of drugs.
In overruling Defendant's motion to suppress, the trial court stated:
 Well, the thing that makes this different, I think, is that is the number of persons present under sus — suspicious circumstances, which was created about the hour of the day and the place being closed and the car that appeared to have no one in it and then suddenly there are three.
 And if other persons were not present under those suspicious circumstances, then perhaps the failure of the police officers to inspect the identification on the scene would be considered different. But it was so necessary that his attention be drawn to one or others that caused him not to make an — a-an immediate confirmation of the identification. And then, of course, he was handed over to another officer.
 The whole idea of suppression of — of evidence is to keep down the instant — instances of police improprie — improper act — activity. And in this case we had so much happening all at one time, there was no intent, of course, to violate the rights of any person.
 So, the Court will overrule the Motion to Suppress Evidence on that basis that so much was happening that the Officer Orick was not really required to make an instantaneous confirmation of the Defendant's identification, that other things were happening at the time and for that reason the Court will overrule the Motion to Suppress Evidence.
(Supp. T. 43-44.)
Defendant argues that police lacked the reasonable suspicion of criminal activity necessary to justify his brief detention in the police cruiser for investigative purposes. Thus, Defendant claims that his detention constitutes an unreasonable seizure in violation of his Fourth Amendment rights, and that the drugs subsequently recovered by police from the rear seat of the police cruiser must be suppressed as fruits of that illegal detention. We disagree.
Warrantless searches are per se unreasonable under the Fourth Amendment, subject to only a few well recognized exceptions. Katz v.United States (1967), 389 U.S. 347. In this case the search and seizurechallenged by Defendant was conducted without a warrant. Thus, itbecomes the State's burden to demonstrate that this search/seizure wasjustified under one of the recognized exceptions to the FourthAmendment's warrant requirement. City of Athens v. Wolf (1974),38 Ohio St.2d 237; City of Xenia v. Wallace (1988), 37 Ohio St.3d 216.
 The investigative stop sanctioned in Terry v. Ohio (1968), 392 U.S. 1,is one of the well recognized exceptions to the Fourth Amendment'swarrant requirement. Under that doctrine, a police officer may stop andbriefly detain an individual in order to investigate possible criminalbehavior, if the officer is able to point to specific and articulablefacts which, taken together with the rational inferences from thosefacts, give rise to a reasonable suspicion that criminal activity isoccurring or may be about to occur. Id. Whether reasonable suspicionexists is measured by an objective standard: would the facts available tothe officer at the moment of seizure or search warrant an officer ofreasonable caution in the belief that the action taken was appropriate.State v. Bobo (1988), 37 Ohio St.3d 177. An unparticularized suspicionor mere hunch is not sufficient to constitute reasonable suspicion.Terry, supra.
 Officer Orick was able to articulate several specific facts which, whentaken together with the rational inferences from those facts, give riseto a reasonable suspicion that criminal activity was or might be afoot.The particular suspicious circumstances included: the time of day; thefact that the restaurant was not open for business; the furtive movementsof the man (Cory Brown) police observed hiding behind the airconditioning units; the fact that the car parked behind the restaurant atfirst appeared to have no one inside, but police subsequently discoveredthree occupants crouched down very low in the seats; the high crimenature of this area and the fact that there had been several robberies inthis area in the recent past, including one at this restaurant; theinconsistent information police were given about the identity of the manbehind the air conditioning units; and the fact that when additionalpolice crews began arriving, Defendant attempted to leave the scene.
 The totality of these facts and circumstances are sufficient to warrantan officer of reasonable caution in the belief that criminal activity wasor might be occurring. Therefore, police acted in a constitutionallyreasonable manner when they stopped and briefly detained Defendant toinvestigate possible criminal activity. Terry, supra; Bobo, supra;Illinois v. Wardlow (2000), 528 U.S. 119. Furthermore, the conduct ofthe officers in detaining Defendant inside the patrol car whileconducting a field interview during the course of this investigatory stopwas also reasonable for Fourth Amendment purposes.
 The officers' suspicions that criminal activity might be afoot, coupledwith the presence of several suspects, gave rise to reasonable concernsof the officers for their safety, according to Officer Orick. In lightof the many robberies in this area in recent months, including one armedrobbery at this restaurant, Officer Orick was concerned that the suspectsmight be casing the business establishment or that a robbery might beoccurring. Officer Orick testified that for safety reasons he wanted thethree suspects inside the vehicle to remain there. Orick's partner,Officer Anderson, was detaining Cory Brown. That left Officer Orickalone with the three suspects inside the vehicle, and Orick did not wantthem to get out of the vehicle and be in a position where they couldcircle him or gain some other tactical advantage. Once Defendant leftthe vehicle, Officer Orick had to simultaneously be concerned withmultiple scenes, and the situation became potentially more dangerous tothe officers. Defendant was placed inside the police cruiser for safetyreasons, until police could ascertain what was going on behind therestaurant. Under these circumstances police had a legitimate reason,concern for their safety, to briefly place Defendant inside the patrolcar, and such conduct was reasonable for Fourth Amendment purposes. Seee.g. State v. Carlson (1995), 102 Ohio App.3d 585; State v. Lozada(2001), 92 Ohio St.3d 74; State v. Evans (1993), 67 Ohio St.3d 405.Defendant's Fourth Amendment rights were not violated., Defendant's firstassignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT USED THE INCORRECT STANDARD TO DETERMINE IF DEFENDANT'S FOURTH AMENDMENT RIGHTS WERE VIOLATED.
In overruling Defendant's motion to suppress, the trial court stated: "there was no intent, of course, to violate the rights of any person." Defendant argues that this is not the appropriate standard to use in determining whether his Fourth Amendment rights were violated. We agree.
In determining whether the seizure of Defendant by the police was constitutionally reasonable with respect to the Terry investigative stopthat took place, the appropriate standard to apply is an objective one:would the facts available to the officer at the moment of seizure orsearch warrant a man of reasonable caution in the belief that the actiontaken was appropriate. Terry, supra. In overruling the previousassignment of error, we applied that standard in order to determine thevalidity of the Terry investigative stop that occurred here, and we concluded that Defendant's Fourth Amendment rights were not violated by the police conduct in this case. Therefore, any error which the trial court's remark about the officer's intent might present is harmless error., Defendant's second assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. and YOUNG, J., concur.