JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Karen C. Parker ("Parker") appeals from her plea of no contest to the following municipal offenses: (1) driving under the influence of alcohol; (2) failing to drive within lanes of continuous travel; (3) failing to signal before changing course; and, (4) failing to wear a seat belt. For the reasons adduced below, we affirm.
 {¶ 2} A review of the record on appeal indicates that the offenses in question occurred on April 23, 2001 at approximately 1:50 a.m. in the city of Mayfield Heights, Ohio.
 {¶ 3} The arresting officer, Mayfield Heights Patrolman Anthony Rotunno, III, testified at the hearing on the defense motion to suppress (which was concerned with the issue of automatic license suspension) that, at the time indicated above, he was on basic patrol in the vicinity of the intersection of Mayfield and SOM Center Roads. He observed Parker's vehicle traveling eastbound on Mayfield Road from the Goldengate Shopping Plaza to SOM Center Road. Rotunno's attention was drawn to Parker's vehicle because it was repeatedly weaving beginning just east of Goldengate Plaza at the overpass for Interstate 271. Rotunno proceeded to drive behind Parker's vehicle and observed Parker's vehicle come very close to striking the curb in the median, touching the white dividing stripes with her wheels, and drifting once into the right through lane. At the intersection of Mayfield and SOM Center Roads, the officer observed Parker's vehicle, from the left lane of two turning lanes, stop for a red light before turning northbound onto SOM Center Road. Parker's vehicle, without regard to other potential traffic (which was minimal at that time of the morning), then merged into the right lane during the turn without signaling a lane change. At that point, Rotunno initiated a stop of Parker's vehicle by activating his overhead emergency lights. Parker's vehicle continued traveling so Rotunno activated his siren a few times; this prompted Parker to stop her vehicle by pulling into the parking lot of Eastgate Shopping Plaza, traveling through the lot until stopping in front of the CVS store.
 {¶ 4} Rotunno approached Parker's vehicle and advised her of the reason for the stop. Rotunno testified that he immediately smelled the odor of alcohol emanating from the vehicle and Parker's breath. Rotunno asked for Parker's license and proof of insurance; Parker fumbled through her purse and told Rotunno that she did not have them. Rotunno asked her if she had been drinking; Parker replied that she had consumed one glass of wine.
 {¶ 5} Rotunno next attempted to administer a series of field sobriety tests to Parker, including the one leg stand, the nine step walk and turn, the horizontal gaze and nystagmus test, and the finger to the nose test.
 {¶ 6} Parker complained of a right leg problem when asked to perform the leg stand test, so Rotunno asked her to use her left leg; Parker refused to do the test.
 {¶ 7} When asked to perform the nine step walk and turn test, Parker began the test but failed midway through after only a few steps, ultimately refusing to do the test.
 {¶ 8} When asked to perform the finger to nose test, Parker failed to follow the instructions given her, opening her eyes and asking numerous questions during the test, and failed the test.
 {¶ 9} When asked to perform the horizontal gaze and nystagmus test, during which the subject keeps her hands on her cheeks and then follows the tip of a pen with her eyes as the pen moves in her field of vision, she failed.
 {¶ 10} At that point Rotunno, based on the odor of alcohol, the weaving and failing to indicate a lane change, her refusal to cooperate on most of the sobriety tests, and the results of those sobriety tests, decided to place Parker under arrest for driving under the influence. A video tape of the "chase" and arrest, taken from a camera mounted in Rotunno's patrol car, was played to the court, with Rotunno being examined as to the tape's contents. Parker was placed in the rear seat of Rotunno's patrol car after which Parker's vehicle was inspected as part of an inventory search. Inside the vehicle was found two clear plastic bags containing suspected marijuana, and in close proximity thereto, an envelope containing sixteen $100 bills. Also found in the car were a few partially smoked marijuana cigarettes in the ashtray and a half-filled bottle of wine behind the driver's seat.
 {¶ 11} Rotunno then transported Parker to the police station where he read Bureau of Motor Vehicles Form 2255 to Parker, advising her of the consequences of her refusing to submit to alcohol testing, and asked her to sign it to verify that she had been informed of this advisement. Parker refused to sign the form. The police next asked Parker to submit to a breathalyzer test; Parker refused the breath test but did indicate that she would take a blood test if she were allowed to contact an attorney. The police, who would have had to transport Parker to a hospital for any blood test, permitted her to attempt to contact an attorney. Parker repeatedly dialed 911 in her attempt to contact counsel.
 {¶ 12} Parker testified on her own behalf at the suppression hearing. She stated that she had left her girlfriend's house and was on her way to her Chesterland home when she decided to stop at a CVS drug store along the way. Parker admitted to having one glass of wine at the girlfriend's house and also stated that she limited her intake of alcohol because she had a prior problem with driving under the influence.
 {¶ 13} Parker recalled making a left turn onto northbound SOM Center Road from Mayfield Road, turning from the left-most lane and changing to the right-most lane in the turn, and claimed she used her signal devices on her car when she made a right turn into the CVS parking lot. Parker also admitted that she gave the officer "a hard time" and was "uncooperative" because she had two previous DUI's and did not understand why she was being pulled over. Parker agreed to take a blood test but refused to take a breath test because she did not feel it was necessary. Parker knew that there was marijuana in the car and admitted smoking it approximately two to three weeks prior to being stopped. Parker also admitted that her car had almost struck the curb on Mayfield Road.
 {¶ 14} Parker next testified that she could not perform the leg stand test because she has a bad hip, a claim which she told the officer. Parker then claimed that she normally had trouble walking, again because of her bad hip, which prevented her from performing the walk and turn test at the scene.
 {¶ 15} Parker admitted that earlier that evening she had purchased the wine found behind her driver's seat at a grocery store and that, several weeks prior to the stop, she smoked the marijuana cigarettes whose remains, or "roaches," were found in the ashtray of her car. She was going to the CVS store to purchase some personal items which she determined that she needed since visiting the grocery store earlier that evening. Parker also admitted to taking medications for depression and anxiety.
 {¶ 16} At the close of the suppression hearing, and after hearing the argument of the parties, the trial court took the matter under advisement. On December 12, 2001, the trial court denied the motion to suppress evidence and the administrative license suspension which resulted from Parker's refusal to submit to alcohol testing.
 {¶ 17} On January 29, 2002, Parker withdrew her plea of not guilty and entered a plea of no contest to the four offenses in issue. The court found Parker guilty of these offenses and sentenced Parker accordingly, staying execution of the sentence pending direct appeal.
 {¶ 18} Appellant-Parker presents five assignments of error for review.
 I {¶ 19} The first assignment of error states: "The Trial Court Erred In Finding That There Was A Reasonable, Articulable Suspicion To Stop Appellant."
 {¶ 20} This court recently iterated the standard of review for a motion to suppress an investigatory stop of a vehicle:
 {¶ 21} "When considering a motion to suppress, a trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972. Accordingly, a reviewing court must defer to the trial court's findings of fact and conclusions of law if competent and credible evidence exists to support the trial court's findings. See State v. Smith (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668.
 {¶ 22} "Furthermore, the state's burden of proof on a motion to suppress evidence is by preponderance of the evidence. See Athensv. Wolf (1974), 38 Ohio St.2d 237, 313 N.E.2d 405.
 {¶ 23} "Regarding the propriety of an investigatory stop, the court in State v. Andrews (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, reiterated the standard as provided in Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889:
 {¶ 24} "`In Terry, the United States Supreme Court held that a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes that the individual is engaged in criminal activity. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'
 {¶ 25} "Further, the propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances. See State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus." City of Rocky River v. Horvath (Apr. 11, 2002), Cuyahoga App. No. 79997.
 {¶ 26} In the present case, the evidence indicates that Parker, while making the left turn from Mayfield Road onto northbound SOM Center Road, started the 90° turn from the left-most of the two dedicated turn lanes and, at the end of the turn, had traveled through adjacent lanes of traffic over to the right-most through lane as she ended the turn. The ordinance in question, Mayfield Heights Ordinance 331.08(a), Driving Within Lanes or Continuous Lines of Traffic, provides in relevant part:
 {¶ 27} "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or whenever traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply: (a) A vehicle shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety. * * *"
 {¶ 28} Parker's action in moving from the left-most dedicated turn lane to the right-most lane of travel clearly violated the ordinance restriction that her vehicle continue its travel within the same "substantially continuous" lane of traffic. Accordingly, the traffic offense having been observed, Officer Rotunno had a reasonable and articulable suspicion upon which to stop Parker's vehicle.
 {¶ 29} The first assignment of error is overruled.
 {¶ 30} The second and third assignments of error will be discussed jointly since they both argue whether there was probable cause for the arrest.
 II {¶ 31} The second assignment of error states: "The Trial Court Erred In Failing To Suppress The Horizontal Gaze Nystagmus (HGN) Test Performed On Appellant."
 III {¶ 32} The third assignment of error states: "The Trial Court Erred In Finding That There Was Probable Cause For Appellant's Arrest."
 {¶ 33} As to probable cause for arrest in a DUI case, the court in State v. Homan (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952, reiterated the following standard:
 {¶ 34} "In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225,13 L.Ed.2d 142, 145; State v. Timson (1974), 38 Ohio St.2d 122, 127, 67 Ohio Op.2d 140, 143, 311 N.E.2d 16, 20. In making this determination, we will examine the `totality' of facts and circumstances surrounding the arrest. See State v. Miller (1997), 117 Ohio App.3d 750, 761,691 N.E.2d 703, 710; State v. Brandenburg (1987), 41 Ohio App.3d 109,111, 534 N.E.2d 906, 908."
 {¶ 35} In the second assignment, appellant argues that Officer Rotunno did not, while performing the test in question, check Parker's eyes for equal tracking as required for the test. Officer Rotunno, during cross-examination by the defense, admitted that he did not perform this particular part of the test. Thus, the trial court should have excluded the results of the HGN test because the test was not performed in strict compliance with standardized procedure. See State v. Homan (2000),89 Ohio St.3d 421, 424. Therefore, the second assignment has merit. However, despite this finding of merit, error in not excluding the result of the HGN test is harmless because appellant cannot demonstrate resulting prejudice due to the remaining circumstances which establish probable cause to arrest. These circumstances include the following: (1) erratic driving; (2) improperly changing lanes while in the turn at Mayfield and SOM Center Roads; (3) the smell of alcohol coming from appellant and the car; (4) an open, partially consumed, bottle of wine behind the driver's seat; (5) a general uncooperative attitude with the arresting officer at the scene of the stop; (6) repeatedly calling 911 when attempting to telephone an attorney during booking.
 {¶ 36} The second and third assignments of error are overruled.
 IV {¶ 37} The fourth assignment of error states: "The Trial Court Erred In Improperly Amending The Charge Against Appellant."
 {¶ 38} On the traffic citation issued to Parker, Officer Rotunno, in relevant part, checked the box for "driving under the influence of alcohol/drug of abuse." The officer also checked the box indicating "refused." Immediately adjacent to this section of the citation the officer indicated that the offenses were a violation of Mayfield Heights Ordinance 331.01(A)(1). The prosecutor, noting that section 331.01(A)(1) refers to the offense of driving on the right side of a roadway, moved to amend the ordinance section number on the citation to reflect 333.01(A)(1), the city's DUI ordinance section. The trial court, subsequent to argument by the parties, granted the motion to amend so as to reflect the appropriate local ordinance section.
 {¶ 39} The amendment of traffic citations is governed by Rule 7(D) of the Ohio Rules of Criminal Procedure. Tiffin v. Ruden (1988),46 Ohio App.3d 138, 139, 546 N.E.2d 223. Crim.R. 7(D) provides that "the court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
 {¶ 40} "The State may amend a traffic ticket that omits necessary information or includes a clerical error as long as: (1) the original traffic ticket gave the defendant notice of the true nature of the offense; (2) the defendant was not deprived of a reasonable opportunity to prepare a defense; and (3) the amendment merely clarifies or amplifies the information in the original ticket." State v. Dunlap (June 24, 1998), Lorain App. No. 97CA006859, citing Cleveland Heights v. Perryman
(1983), 8 Ohio App.3d 443, 446, 457 N.E.2d 926.
 {¶ 41} In the present case, it is undeniable that the original citation gave Parker notice of the true nature of the offense; to-wit, describing the offense as driving under the influence. Furthermore, Parker was not deprived of any opportunity to prepare her defense to the charge, noting that the motion to suppress specifically dealt with the DUI offense. Lastly, the amendment simply clarified the information in the original DUI citation.
 {¶ 42} Appellant next argues that her speedy trial rights were violated if the amendment of the ordinance section is upheld. Appellant had waived speedy trial rights on the original charge. This argument must fail since "the amendment of a complaint, unlike the imposition of additional charges, does not create an additional burden on the defendant's liberty interests." State v. Campbell, 150 Ohio App.3d 90, syllabus, 2002-Ohio-6064, 779 N.E.2d 811. Therefore, the speedy-trial period computation for the amendment relates back to the speedy trial period of the original charge. Id.
 {¶ 43} The fourth assignment of error is overruled.
 V {¶ 44} The fifth, and final, assignment of error states: "The Trial Court Erred In Finding That Appellant Refused To Submit To A Test Of Her Blood Alcohol Content."
 {¶ 45} Despite the evidence suggesting that appellant agreed to submit to a blood test at her expense at a local hospital if she could have a lawyer present, that appellant was unsuccessful in contacting an attorney, and that the police would not ultimately honor her request for the blood test, the record clearly reflects that Parker verbally refused to submit to a breathalyzer test when requested to do so by the police during booking in conformance with R.C. 4511.191(A) ("The law enforcement agency by which the officer is employed shall designate which of the tests shall be administered" in determining the alcohol content of a person's blood, breath or urine in a motor vehicle offense situation).
 {¶ 46} The fifth assignment of error is overruled.
KENNETH A. ROCCO, A.J., and MICHAEL J. CORRIGAN, J., CONCUR.