Carr, Presiding Judge,
dissenting.
{¶ 15} I respectfully dissent because I cannot agree that the state met its burden at the suppression hearing. In fact, the evidence presented by the state was so deficient that it failed to reveal what areas of Friedman’s vehicle were searched, what incriminating evidence was found, or where the officers found it. I do not believe that this court can or should address the isolated issue of whether a search warrant was required to enter the vehicle, as we are presented with too limited a record and the necessity of a warrant does not resolve the ultimate question at the suppression hearing: whether the subsequent search of Friedman’s vehicle and seizure of evidence from it were constitutional.
{¶ 16} Searches conducted outside the judicial process, without a warrant, are per se unreasonable, subject to a few specifically established exceptions. Athens v. Wolf (1974), 38 Ohio St.2d 237, 239, 67 O.O.2d 317, 313 N.E.2d 405. The state had the burden of showing, by at least a preponderance of the evidence, that the search of Friedman’s vehicle, and ultimate seizure of evidence, fell within a recognized exception to the Fourth Amendment’s requirement of a warrant. Id. at 241, citing Chimel v. California (1969), 395 U.S. 752, 761, 89 S.Ct. 2034, 23 L.Ed.2d 685, and Lego v. Twomey (1972), 404 U.S. 477, 488, 92 S.Ct. 619, 30 L.Ed.2d 618.
{¶ 17} The state’s burden to demonstrate the propriety of its warrantless search and seizure was not limited to the officers’ initial decision to open the vehicle and commence its search without a warrant. “The question remains whether, apart from the lack of a warrant, this search was unreasonable.” California v. Carney (1985), 471 U.S. 386, 394, 105 S.Ct. 2066, 85 L.Ed.2d 406. *684 The “ ‘touchstone of the Fourth Amendment is reasonableness,’ ” which is “measured in objective terms by examining the totality of the circumstances.” Ohio v. Robinette (1996), 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347, quoting Florida v. Jimeno (1991), 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297. Given the limited record before us, we cannot begin to examine the totality of the circumstances.
{¶ 18} Friedman was charged with possession of marijuana and possession of drug paraphernalia, described as a glass smoking pipe. Aside from the charges against her, which suggest that the state discovered marijuana and a glass smoking pipe in her possession, there is nothing in the record to indicate what evidence was apparently seized from her vehicle. She filed a broad motion to suppress, asserting that evidence had been seized from her vehicle in violation of her Fourth Amendment rights. Prior to the commencement of the suppression hearing, the parties met with the trial judge and agreed to narrow the legal issues. Friedman did not dispute that a drug dog had alerted to the exterior of her vehicle, which was parked and locked on public property, and that she was not present at the scene. The hearing was explicitly limited to the subsequent warrantless search and seizure. Ultimately, however, the state confined its evidence almost exclusively to facts that preceded the officers’ decision to enter Friedman’s vehicle without obtaining a warrant. Evidence of what happened after the officers opened the car door is noticeably lacking from the record.
{¶ 19} Most of the evidence at the hearing focused on the officer’s unsuccessful attempts to locate Friedman. A warrantless search of her vehicle then ensued, but we are left to speculate about what happened after the police officers opened the car door. The only testimony about the search was that the drug dog went into the vehicle “and hit on a couple areas” and then the two officers “basically divided the vehicle in half,” with one officer searching the driver’s side and the other searching the passenger side. The state presented no evidence about how the officers conducted the search, what specific areas of the vehicle or items within it were searched, or where and what items of contraband were found. I cannot agree to reverse the trial court’s suppression order without any evidence to demonstrate that the search and seizure were reasonable.
{¶ 20} The officers’ entry into Friedman’s vehicle without a warrant was merely the beginning of the alleged invasion of her Fourth Amendment rights. It was the warrantless search and seizure of evidence that was challenged by Friedman, not simply the warrantless entry into her vehicle. It was far more significant that, after entering her vehicle, the officers proceeded to search it and ultimately found and seized incriminating evidence. Had the officers entered her vehicle and found nothing, Friedman would not have been charged and this suppression issue would not be before us.
*685 {¶ 21} Moreover, even if I could agree with the majority that this court should address the reasonableness of this warrantless search and seizure on the merits, I cannot agree to reverse the trial court’s suppression order. While I recognize that Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406, Illinois v. Caballes (2005), 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842, and other controlling case law in this area could be extended to authorize the warrantless search in this case, I cannot agree that it should be extended to the facts of this case.
{¶ 22} Although Justice Ginsberg warned her colleagues in Caballes, 543 U.S. at 422, 125 S.Ct. 834, 160 L.Ed.2d 842 (Ginsberg, J., dissenting), that “[tjoday’s decision * * * clears the way for suspicionless, dog-accompanied drug sweeps of parked cars along sidewalks and in parking lots[,]” it is clear that Caballes did not authorize the random and wide-scale use of drug dogs as a means to create probable cause to search vehicles parked on public streets. Caballes involved an occupied vehicle that was subjected to a lawful traffic stop. In a separate opinion, Justice Souter emphasized that he did not agree with the decision of the majority due to the fallibility of drug dogs and further stated that although he shared Justice Ginsberg’s concerns about the implications of the majority’s holding, he did not believe that the decision had authorized the wide-scale use of drug dogs to justify searching parked vehicles. Id. at 417 (Souter, J., dissenting). In fact, the language of the majority opinion is explicitly limited to dog sniffs by trained narcotics dogs during lawful traffic stops that reveal no information other than the location of an illegal substance. Id. at 409.
{¶ 23} The facts of Caballes and most of the case law in this area have involved a search following a dog alert during a lawful traffic stop and the Fourth Amendment reasonably supported the end result: the use of a drug dog to sniff a lawfully stopped vehicle has been effective in detecting a drug trafficker who was in the process of using a vehicle to transport drugs on one of our nation’s highways. The minimal intrusion of the drug dog, and the resulting search after it alerted, was justified because it enabled the police to protect the public from a drug trafficker and a sizable quantity of drugs that could be lost if the police were required to wait for a warrant.
{¶ 24} There is no similar rationale for extending that body of case law to the facts of this case, which are in sharp contrast to any of the cases cited by the majority. Unlike the settings of any prior precedent on this issue, the police officers in this case had not lawfully stopped Friedman’s vehicle, nor had they encountered her vehicle at the scene of a criminal investigation. Consequently, there was no need for them to act quickly in the heat of an ongoing investigation to protect the safety of themselves or others or to prevent the destruction of evidence or flight of a suspect. Without any suspicion that any vehicle parked on *686 the street was involved in criminal activity, even a traffic or parking violation, police officers paraded a drug dog up and down the street,[1] attempting to create probable cause to search some of them. They deliberately targeted parked vehicles because an assistant prosecutor had advised them that if the trained drug dog alerted after sniffing the exterior of a vehicle, they had probable cause to enter and search without a warrant. The warrantless search in this case appears to have been done simply for the convenience of law enforcement.
{¶ 25} I fear that these circumstances may be perceived as a matter of the ends justifying the means. Subjecting parked, locked, and unoccupied vehicles to suspicionless drug-dog sweeps, in an effort to create probable cause to search them, does not better serve the public, but instead threatens the privacy of anyone who parks a vehicle on public property, if the drug dog falsely alerts. The fact that, in this case, a minor misdemeanant was apprehended does not justify the intrusion. In some situations, the dog will falsely alert, and an innocent vehicle owner will have the entire contents of her vehicle rifled through by the police, outside her presence. Moreover, she will not likely have any recourse for the unnecessary invasion into her privacy, for no criminal case against her will result. I would overrule the state’s assignment of error and affirm the trial court’s decision granting Friedman’s motion to suppress.

. It is unclear from the record whether Friedman's vehicle was parked on Ohio State University property or on a public street in the city of Wooster.