[Cite as *State v. Chesnic*, 2018-Ohio-5327.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-A-0030** |
| AMBER M. CHESNIC, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2017 CR 00386.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Phillip L. Heasley*, Ashtabula County Public Defender, Inc., 4817 State Road, Suite 202, Ashtabula, OH 44004 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Amber M. Chesnic, appeals the trial court's denial of her motion to suppress after pleading no contest to three felonies, aggravated trafficking of drugs, aggravated possession of drugs, and possessing criminal tools. We affirm.

{¶2} Chesnic raises one assignment of error:

{¶3} "The trial court erred in overruling defendant's motion to suppress the contents of her purse."

{¶4} She claims the warrantless search of her purse was illegal and should have been suppressed.

{¶5} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." Fourth Amendment, United States Constitution. The Ohio Constitution likewise protects against arbitrary government invasions. *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶11, citing *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997). The touchstone of both is reasonableness. *State v. Michael,* 10th Dist. Franklin No. 12AP-508, 2013-Ohio-3889, 995 N.E.2d 286, ¶10.

{¶6} "'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' (Footnote omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

{¶7} "When a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement. *Athens v. Wolf*, 38 Ohio St.2d 237, 241, 313 N.E.2d 405 (1974)." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶17-18.

{¶8} Appellate courts review rulings on a motion to suppress under a mixed standard of review. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d

2

71, ¶8. "[T]he trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* We must accept the trial court's findings of fact if they are supported by competent, credible evidence, and then independently decide whether those facts satisfy the applicable legal standards without deference to the trial court's decision. *Id.*

{¶9} Officer Shawn Gonzalez of the city of Geneva police department was the only witness at the suppression hearing. On the date of Chesnic's arrest, Gonzalez was advised by a member of the county drug task force to watch for a passing vehicle whose occupants were involved in suspected drug activity. Gonzalez stopped the car after the driver improperly signaled. The driver pulled the car into a driveway on Grant Street.

{¶10} Chesnic was the front seat passenger. Both Chesnic and the driver were placed under arrest for presenting Gonzalez with suspended driver's licenses, and the driver was also driving under suspension.

{¶11} Upon exiting the vehicle, Chesnic had her purse on her shoulder and her phone in her hand. She was told to remove her purse so that she could be handcuffed. She pulled away from the officer, and the bag either dropped to the ground or Gonzales placed it there. He recalls needing assistance securing her. Gonzales placed her cell phone on her purse. Chesnic advised him that she was not consenting to a search of her purse.

{¶12} After Chesnic was secured, Gonzales looked in her purse at the scene. He explained: "I couldn't put a purse inside my vehicle not knowing if there's a gun, safety issue, drugs or anything, because * * * she was being arrested. It's going with her, and her purse [was going] into the city jail. So we're gonna inventory that property."

{¶13} Chesnic did not instruct him to leave her purse on the ground and did not tell him to leave it in the car.

{¶14} On cross-examination, Gonzales confirmed that the driver and owner of the car did not want his car left in the driveway in which he was parked. Gonzales called for a tow of the vehicle and explained he had to inventory the vehicle contents pursuant to policy. He inventoried the car after looking in Chesnic's purse.

{¶15} Chesnic argues that because her purse was out of her control at the time of her arrest, the police did not have the right to inventory it because they should have left the purse on the ground, in the car, or at the home where the traffic stop occurred. However, there was nothing evidencing who lived at this home. Alternatively, she claims a second officer should have watched over the purse while another secured a warrant to search it, and that an inventory search was not justified.

{¶16} The state claims the search of Chesnic's purse was permissible as an inventory search, and alternatively, via the inevitable discovery doctrine. The trial court agreed with the state and denied Chesnic's suppression motion. The trial court made the following factual findings in support of its decision, which are supported by competent credible evidence:

{¶17} "When the defendant got out of the car she was carrying a large shoulder bag style purse. She was required to put the purse down in the driveway when she was handcuffed. When she was arrested, the defendant told Officer Gonzalez that she did not consent to a search of her purse. She was placed in another officer's patrol car. After the defendant was placed in the cruiser, Deputy Sterrick retrieved the purse and it was searched, resulting in the discovery of the items giving rise to these charges, i.e.,

4

methamphetamine, digital scales, and baggies, among other things. Nothing suspicious was observed in the vehicle the defendant was riding in, prior to her arrest. * * * Officer Gonzalez candidly testified that he was looking for weapons or contraband in the purse. He also stated that it was an inventory search of the purse.

**{¶18}** "* * *

**{¶19}** "[T]he defendant's purse was not retrieved from the vehicle. She evidenced her desire and intention to bring the purse with her when she was directed to get out of the car. The purse was in her physical possession when she was placed under arrest. * * *

**{¶20}** "* * * the testimony at the hearing was not entirely clear that the purse was actually inventoried at the scene * * *."

**{¶21}** An inventory search is not subject to the Fourth Amendment's warrant requirement or a probable-cause review, because it is a search that is made for administrative reasons and is unrelated to a criminal investigation. *State v. Mesa*, 87 Ohio St.3d 105, 109, 717 N.E.2d 329 (1999) (upholding the search of an armrest console as part of the inventory search of a lawfully impounded vehicle).

**{¶22}** The Supreme Court recently reiterated the parameters of the inventory search in *State v. Banks-Harvey,* 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶21:

**{¶23}** "As a practical matter, the personal effects with a person at the time of his or her arrest *must* be stored while the person is in jail. And because the police are potentially responsible for the items, they are permitted to search and inventory the personal effects that come into their custody. *Colorado v. Bertine*, 479 U.S. 367, 373,

5

107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (upholding the search of a backpack in a vehicle as part of an inventory search of a lawfully impounded vehicle). This administrative search and inventory is intended to help guard against claims of theft or careless handling and also protects the police from dangerous instruments. *Id. Accord Lafayette* at 647, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (upholding the inventory search of an arrestee's shoulder bag conducted at the police station). Even if less intrusive means of protecting property are available, such as sealing items in a plastic bag and placing them in a secured locker rather than searching and inventorying them, it is not unreasonable for police, as part of routine procedure incident to incarceration, to search any article or container in the arrestee's possession in accordance with established inventory procedures. *Lafayette* at 647-648, 103 S.Ct. 2605." (Emphasis added.)

**{¶24}** In *Banks-Harvey,* however, the court found the inventory search rule did not apply because the defendant had left her purse in the car, and the owner of the car was present and not being arrested at the time. Thus, when the police retrieved her purse from the car, the car was not going to be towed and inventoried, and as such, the retrieval of her purse from the car was unlawful. And the subsequent warrantless search of the purse was a violation of the Fourth Amendment requiring exclusion. *Banks-Harvey* further rejected the inevitable discovery doctrine because there was nothing evidencing that the car would have been searched absent the discovery of drugs in her purse. *Id.* at ¶31. Instead, the officer recalled seeing a capsule on the car's floorboard and decided to search the vehicle only *after* finding the narcotics in the purse. *Id.*

**{¶25}** Unlike *Banks-Harvey*, however, Chesnic had her purse on her shoulder and under her control at the time she exited the vehicle when she was being arrested. Thus,

6

the officer was required to store her purse while she was in jail.   Moreover, the driver of the vehicle here was already under arrest at the time.  The driver advised Gonzalez that he did not want his vehicle left at the Grant Street residence, and accordingly his car was going to be towed and inventoried.  Thus, *Banks-Harvey* is distinguishable.  Further, Gonzalez explained that Chesnic and her purse were going to the city jail, and thus, he had to inventory its contents consistent with policy.

**{¶26}** Contrary to Chesnic's arguments, it is unreasonable to expect police to leave an arrestee's purse in a driveway or to require an officer to stand guard over a purse in a driveway while a warrant is obtained.  As stated in *Banks-Harvey*, it is not unreasonable for police, as part of routine procedure incident to incarceration, to search an arrestee's purse consistent with policy because officers are required to store an individual's possessions with a person at the time of their arrest.  *Id.* at ¶22.

**{¶27}** Finally, we reject Chesnic's argument that suppression is required because Gonzalez's testimony failed to establish the applicable police policy governing his inventory of an arrestee's possessions and whether he actually inventoried the contents of Chesnic's purse at the scene or later at the jail.  Because Chesnic did not raise this issue to the trial court, it is waived on appeal.  *State v. Thomas*, 3d Dist. Allen No. 1-16-36, 2017-Ohio-4356, 91 N.E.3d 1273, ¶18, *appeal not allowed,* 151 Ohio St.3d 1456, 2017-Ohio-8842, 87 N.E.3d 223, *citing State v. Shindler*, 70 Ohio St.3d 54, 58, 636 N.E.2d 319 (1994).  Moreover, Chesnic likewise fails to raise this issue in her appellate brief, and instead, only makes this argument in her reply brief.  Reply briefs are designed to allow an appellant to respond to the appellee's brief.  *City of Dublin v. Friedman,* 10th Dist. Franklin No. 16AP-516, 2017-Ohio-9127, 101 N.E.3d 1137, ¶63.  "A party may not

7

advance new arguments in its reply brief." *Clifton Care Ctr. v. Ohio Dept. of Job & Family Servs.*, 2013-Ohio-2742, 994 N.E.2d 879, ¶13.

{¶28} Based on the foregoing, Chesnic's sole assigned error lacks merit, and the trial court's decision is affirmed.

DIANE V. GRENDELL, J., concurs with a Concurring Opinion,

COLLEEN MARY O'TOOLE, J., dissents.

––––––––––––––––

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

{¶29} I concur in the judgment and opinion of the court. I write separately, however, to note that Officer Gonzalez' search of Chesnic's purse was reasonable under Fourth Amendment standards even if the argument had not been waived. *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) ("the ultimate touchstone of the Fourth Amendment is 'reasonableness'").

{¶30} Officer Gonzalez testified as follows regarding the search at the suppression hearing:

> [Chesnic] exited the vehicle with her purse on her left shoulder, and was instructed to come to the rear of the vehicle. * * * She was told to remove her purse because I was handcuffing her -- can't handcuff her with the purse on. She pulled away from me. I almost, I think I had the bag in my hand, or the bag dropped at this point in time, because she pulled away from me. * * * When she was secured I then gained possession of the purse. Because now I have to secure

8

it in my vehicle.  * * *  Officer Lynch had a flashlight out while I went through it.  I couldn't put a purse inside my vehicle not knowing if there's a gun, safety issue, drugs or anything, because eventually we're going to go to -- she was being arrested.  It's going with her, and her purse into the city jail.

**{¶31}** As recognized in the majority opinion, the Ohio Supreme Court has held that the police "are permitted to search and inventory the personal effects that come into their custody" inasmuch as "the personal effects with a person at the time of his or her arrest must be stored while the person is in jail."  *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 21.

**{¶32}** In *Banks-Harvey*, the evidence found during the inventory search of the defendant's purse was suppressed because the police obtained possession of the purse in violation of the Fourth Amendment.  *Id.* at ¶ 23 ("[i]n this case, the trooper retrieved a personal item belonging to an arrestee from a place that is protected under the Fourth Amendment").  However, "if appellant had been arrested * * * with her purse on her person," as Chesnic was in this case, "[the court] would have been compelled to reach a different result."  *Id.* at ¶ 24.

**{¶33}** Although the search of Chesnic's purse has been characterized as an inventory search by the parties, the search was more akin to an administrative search such as is conducted at airports and government buildings.  Officer Gonzalez' testimony clearly indicates that his purpose was not to inventory the contents of the purse, but to search for contraband prior to the purse accompanying Chesnic to jail.  Chesnic's purse would have been subject to the same search if she were voluntarily seeking to visit the

9

jail (or an airport or the building in which this court sits). *Compare Indianapolis v. Edmond*, 531 U.S. 32, 47-48, 121 S.Ct. 447, 143 L.Ed.2d 333 (2000) (the holding that a highway checkpoint program the primary purpose of which was the discovery and interdiction of illegal narcotics violated the Fourth Amendment did "not affect the validity of border searches or searches at places like airports and government buildings"); *State v. Book*, 165 Ohio App.3d 511, 2006-Ohio-1102, 847 N.E.2d 52, ¶ 17 (4th Dist.) (evidence obtained during court-security screening ruled inadmissible where "the screenings carried out in the Chillicothe Municipal Courthouse were not uniformly applied").

{¶34} For the additional reasons stated above, I concur in the judgment and opinion of the majority.