DECISION AND JUDGMENT ENTRY
{¶ 1} The State of Ohio appeals the Washington County Court of Common Pleas' decision granting Scott Flanders's motion to suppress statements he made to law enforcement officers. The state contends that the court applied the incorrect standard for determining whether Flanders was "in custody," and that the court consequently erred in finding that Flanders was in custody and excluding his statements. Because we find that a reasonable person in Flanders's position would have believed that he was in custody, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} On September 12, 2005, at about 11:00 a.m., Marietta Police Department Officer Matthew Hickey and Washington County Sheriff's Deputy Brian Rhodes pulled over a car on Interstate 77. Officer Hickey testified that he pulled the car over because it was following another car too closely and because, when he ran the Mississippi license plate, "it didn't come back to anything." Flanders was the front-seat passenger and the owner of the car.
 {¶ 3} After the car stopped, both officers approached the vehicle. Deputy Rhodes went to the driver's side and obtained the driver's license, the car registration, and proof of insurance. Officer Hickey stood at the passenger side of the vehicle. While Deputy Rhodes verified the license and registration, Officer Hickey walked a drug-sniffing dog around the vehicle. The dog alerted on the vehicle twice, once on the driver's side and once on the passenger's side. A third officer, Deputy Norman, arrived on the scene.
 {¶ 4} Deputy Norman ordered the driver out of the car, conducted a pat-down search, and then ordered the driver to stand with the other officers. Deputy Norman then ordered Flanders out of the car, informed Flanders that the drug dog had alerted on the car, and informed Flanders that he would conduct a search of Flanders's person and the car. When Deputy Norman patted Flanders down, he discovered a marijuana pipe in Flanders's pocket. Deputy Norman testified that after finding the pipe, Flanders was not free to leave. Officer Hickey and Deputy Rhodes also testified that once they found the pipe, Flanders was not free to leave. However, none of the officers informed Flanders of this fact.
 {¶ 5} Deputy Norman again told Flanders that the drug dog had alerted on the car, and then asked if there was anything in the car that he should know about. After Flanders replied that there was a small amount of marijuana in the car between the driver and passenger seats, Deputy Norman ordered Flanders to stand next to the cruiser with the other two officers. Deputy Norman found the marijuana where Flanders indicated. He also found a bag containing a white substance.
 {¶ 6} Deputy Norman held up the bag of white matter, looked in the direction of Flanders, and said, "What is this?" Flanders replied that it was crystal meth. Deputy Norman did not have any further conversation with Flanders. At that point, Officer Hickey and Deputy Rhodes begin questioning Flanders, in a manner they characterized as "small talk," about the source of the drugs and Flanders's involvement with it. Flanders made a statement about using crystal meth to keep up with the younger men with whom he worked. After the officers completed the search of Flanders's car, they placed Flanders under arrest. The officers did not question Flanders after his arrest.
 {¶ 7} Flanders filed a motion to suppress the statements he made between the time Deputy Norman found the marijuana pipe and the time of his formal arrest. Flanders did not file a motion to suppress the results of the search of his person or his vehicle. At the hearing on the motion to suppress Flanders's statements, the state presented the testimony of the three officers. Flanders did not present any witnesses.
 {¶ 8} The trial court granted Flanders's motion. The court found that after the drug dog alerted on the vehicle and officers found a pipe in Flanders's pocket, he was not free to leave the scene. Therefore, the court concluded, the officers needed to give Miranda warnings before questioning Flanders. Because the officers did not give Flanders theMiranda warnings at any time during the traffic stop, the trial court concluded that all statements made by Flanders in response to the officers' questions or statements were obtained in violation of his constitutional rights.
 {¶ 9} The state appeals, asserting the following assignments of error: I. "The trial court applied the incorrect legal standard in determining whether the appellee was in custody in ruling upon the appellee's motion to suppress statements." II. "The trial court erred in finding that appellee was in custody and in suppressing his statements because he was not given Miranda warnings first."
 II. {¶ 10} In its first assignment of error, the state contends that the trial court applied the wrong standard to determine whether Flanders was in custody at the time he made incriminating statements. Specifically, the state contends that the court based its determination upon the law enforcement officers' subjective belief that Flanders was not free to leave, rather than upon what a reasonable person in Flanders's shoes would have believed. In its second assignment of error, the state contends that the trial court's application of a subjective test instead of an objective test led to the court's erroneous conclusion that Flanders was "in custody" for Miranda purposes at the time he made the incriminating statements. Because these assignments of error are interrelated, we address them together.
 {¶ 11} Our review of a decision on a motion to suppress presents mixed questions of law and fact. State v. McNamara (1997),124 Ohio App.3d 706, citing United States v. Martinez (C.A.11, 1992), 949 F.2d 1117,1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. State v. Dunlap (1995),73 Ohio St.3d 308, 314. Accordingly, we must uphold the trial courts findings of fact if competent, credible evidence in the record supports them. Id. We then conduct a de novo review of the trial court's application of the law to the facts. State v. Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 12} Law enforcement officials are obligated to administerMiranda warnings only to those who are interrogated while "in custody."Oregon v. Mathiason (1977), 429 U.S. 492, 495, 97 S.Ct. 711,50 L.Ed.2d 714. The issue of whether a suspect was "in custody" at the time of questioning is subject to de novo review. United States v. Salvo (C.A.6, 1998), 133 F.3d 943, 948, citing Thompson v. Keohane (1995),516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383.
 {¶ 13} Miranda defines "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, supra, at 444. "The ultimate inquiry is simply whether there [was] a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v.Beheler (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275, quoting Mathiason, supra, at 495. The inquiry focuses upon how a reasonable person, innocent of any wrongdoing, would have understood the situation if he was in the suspect's position. Stansbury v.California (1994), 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293;Berkemer v. McCarty (1984), 468 U.S. 420, 442, 104 S.Ct. 3138,82 L.Ed.2d 317. The subjective views of the interviewing officer and the suspect are immaterial to the determination of whether a custodial interrogation was conducted. Stansbury, 511 U.S. at 323.
 {¶ 14} A motorist who is temporarily detained as the subject of an ordinary traffic stop is not "in custody" for the purposes ofMiranda. Berkemer, 468 U.S. at 440. The circumstances surrounding a typical traffic stop: a brief detention, in public, involving only one or two police officers, "are not such that the motorist feels completely at the mercy of the police." Berkemer, 468 U.S. at 438. However, if the motorist "thereafter is subjected to treatment that renders him `in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Id. at 440, citingMathiason, 429 U.S. at 495.
 {¶ 15} The Ohio Supreme Court recently considered the question of whether a motorist was "in custody" for Miranda purposes under circumstances similar to those present in this case. See State v.Farris, 109 Ohio St.3d 519, 2006-Ohio-3255. The Court issued its decision in Farris after the interrogation and arrest at issue here. The state contends that Farris changed the law regarding custodial interrogation in Ohio, and that applying this change retroactively would not serve a deterrent effect on law enforcement officers. Therefore, the state contends that we should not apply Farris to this case.
 {¶ 16} In Farris, the Court set forth the law regarding custodial interrogations in the context of traffic stops as set forth inBerkemer. The state recognizes in its brief that the Farris Court applied the "appropriate standard" by using the reasonable person test. Because the Court used the Berkemer test, the Court did not set forth a new rule of law. "Where a decision of this Court merely has applied settled principles to a new set of facts, it has been a foregone conclusion that the rule of the later case applies in earlier cases. Conversely, where the Court has declared a rule of criminal procedure to be `a clear break with the past,' it almost invariably has found the new principle nonretroactive." U.S. v. Johnson, (1982), 457 U.S. 537, 549,102 S.Ct. 2579, 73 L.Ed.2d 202. In Farris, the Ohio Supreme Court applied well-settled law to a new set of facts. Farris does not represent a clear break with the Court's past decisions. Consequently, we find that the Court's analysis in Farris is relevant here.
 {¶ 17} The Farris Court concluded, under the facts before it, that the officers' conduct subsequent to the original traffic stop placed the motorist "in custody" for Miranda purposes. Farris at ¶ 14. In particular, the Court noted that the officer patted down the motorist, took his car keys, instructed him to sit in the front seat of the cruiser, and informed him that an officer would search his vehicle. Id. The Court concluded that the motorist "was not free to leave the scene — he had no car keys and reasonably believed that he would be detained at least as long as it would take for the officer to search his automobile." Id.
 {¶ 18} The state first contends that the trial court erred in failing to apply a reasonable person test to Flanders's circumstances. In its entry, the trial court found "after a drug-sniffing dog alerted on the vehicle, and a smoking pipe was found on [Flanders's] person, [Flanders] was not free to leave the scene, and therefore Miranda warnings needed to be given to [Flanders] before any questioning by the officers." The court did not attribute its finding that Flanders was not free to leave to the law enforcement officers' testimony that Flanders was not free to leave. Rather, the court attributed the finding to the circumstances involved: the fact that a drug sniffing dog alerted to the vehicle and that officers found a smoking pipe on Flanders.
 {¶ 19} We cannot definitively determine from the court's entry whether the court applied a "reasonable person" test to reach its conclusion. Thus, while we agree with the state that the proper test for determining the custody question is a reasonable person test (see Farris), we cannot find that the trial court failed to apply the proper test here.
 {¶ 20} The state next contends that the trial court erred in concluding that Flanders was "in custody" at the time he made his incriminating statements. In particular, the state contends thatFarris is distinguishable from this case because in Farris, the officers asked the defendant to sit in the cruiser immediately. Here, the officers waited until the drug dog alerted, and then asked Flanders to stand next to the cruiser, not sit in it.
 {¶ 21} To determine whether the court correctly concluded that Flanders was "in custody," we must determine what a reasonable person, innocent of any wrongdoing, would have believed in Flanders's situation. Here, the facts are undisputed. After police stopped Flanders's car, two officers approached the vehicle. One went to the driver's side window, while the other stood at the rear corner of the vehicle. While one officer checked the driver's license, registration, and proof of insurance, Flanders observed the other officer walk a drug dog around the car. A third officer, Deputy Norman, then arrived on the scene.
 {¶ 22} Deputy Norman ordered the driver out of the car, conducted a pat-down search, and then ordered the driver to stand with the other officers. Deputy Norman then ordered Flanders out of the car, informed Flanders that the drug dog had alerted on the car, and informed Flanders that he would conduct a search of Flanders's person and the car. When Deputy Norman patted Flanders down, he discovered a marijuana pipe in Flanders's pocket.
 {¶ 23} Deputy Norman again informed Flanders that the drug dog had alerted on the car and asked if there was anything in the car that he should know about. After Flanders replied that there was a small amount of marijuana in the car, Deputy Norman ordered Flanders to stand next to the cruiser with the other two officers. After Deputy Norman found the crystal methamphetamine, he directed a question about the nature of the substance toward Flanders. After Flanders responded that the substance was crystal meth, the other officers begin questioning Flanders about the source of the drugs and Flanders's involvement with it.
 {¶ 24} We find that a reasonable person, even one innocent of any wrongdoing, would have believed that he was not free to leave at the time Flanders made statements prior to his formal arrest. Even an innocent person, upon: (1) being ordered out of his vehicle; (2) having a marijuana pipe found upon his person; (3) learning that a drug dog had alerted to his vehicle; and (4) learning that officers intended to search his vehicle; would believe that police were detaining him for questioning beyond that associated with a routine traffic stop. As inFarris, the three officers' actions here caused Flanders to "reasonably [believe] that he would be detained at least as long as it would take the officer to search his automobile." Farris at ¶ 14. Thus, we find that the trial court did not err in determining that Flanders was in custody for Miranda purposes during the officers' questioning.
 {¶ 25} Accordingly, we overrule the state's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J. and Abele, J.: Concur in Judgment and Opinion.