[Cite as *State v. Prater*, 2024-Ohio-5367.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | |
|---|---|
| STATE OF OHIO, | : |
| Plaintiff-Appellee, | : CASE NO. 23CA1178 |
| v. | : |
| JERICHO PRATER, | : DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : |

_____

APPEARANCES:

Brian T. Goldberg, Cincinnati, Ohio, for appellant[1].

Aaron E. Haslam, Adams County Prosecuting Attorney, West Union, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:11-4-24
ABELE, J.

{¶1} This is an appeal from an Adams County Common Pleas Court judgment of conviction and sentence. Jericho Prater, defendant below and appellant herein, assigns three errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. PRATER BY IMPROPERLY DENYING HIS MOTION TO SUPPRESS."

---

[1] Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"MR. PRATER'S CONVICTION WAS NOT SUPPORTED BY
SUFFICIENT EVIDENCE AND IS CONTRARY TO THE
MANIFEST WEIGHT OF THE EVIDENCE."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF MR.
PRATER BY ALLOWING THE STATE OF OHIO TO IMPEACH
HIM WITH A PRIOR CONVICTION [THAT] WAS NOT AN
IMPEACHABLE OFFENSE."

**{¶2}** In May 2022, an Adams County Grand Jury returned an indictment that charged appellant with one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a second-degree felony, with a finding that "the amount of drugs was apx. 18.88 grams total.[2]"    Appellant entered a not guilty plea.

**{¶3}** Subsequently, appellant filed (1) a motion to suppress evidence uncovered during a traffic stop, and (2) a motion in limine to prohibit the introduction of evidence obtained from the warrantless search of a separate, closed, and locked container found in appellant's vehicle.  At the suppression hearing, Adams County Sheriff's Detective Sam Purdin testified that on August 26,

---

[2] The trial court later granted the state's motion to amend the indictment to find that "the amount of drugs found was approximately 23.67 grams."

2021, at around 4:00 p.m., he received a phone call from Laura Dryden from a business in West Union. Dryden told Purdin that appellant attempted to sell methamphetamine to her and to obtain hypodermic needles from her. In addition, a Peebles police officer (Nicholas) advised Purdin that he "had received complaints that [appellant] was driving around on a suspended license in a red Dodge pickup truck * * * and selling drugs." Throughout his career, Purdin had several dealings with appellant, "usually drug related."

{¶4} Detective Purdin verified appellant's suspended license with dispatch prior to his contact with appellant at a gas station. When appellant exited his vehicle and began to pump gas, Purdin advised appellant that he knew appellant did not possess a valid license, but nevertheless allowed him to continue to pump gas. Appellant informed Purdin that "he had used methamphetamine earlier that morning * * * and knew his license was under suspension." When Purdin inquired whether appellant's vehicle contained drugs, appellant told Purdin he did not have drugs in the vehicle and said that Purdin "was welcome to look in the vehicle." Purdin acknowledged that, at the time he searched appellant's vehicle, he

did not arrest appellant, but "[h]e wasn't free to leave." Purdin also allowed appellant to eat his McDonald's lunch while he talked to him and searched his truck.

{¶5} The State played Detective Purdin's body camera footage for the court. In the video, Purdin asked appellant, "did you have a problem if I checked your vehicle?" Appellant replied, "[inaudible] I mean you are more than welcome to look in it. I mean it's." After a discussion about appellant's recent location, Purdin asked, "so, you got anything on?" Appellant replied, "No, I mean, I swear I went over there to get needles." Appellant explained that the needles were for a friend. When asked if he still used heroin, appellant replied, "no." When asked if he still used methamphetamine, appellant replied, "Yeah."

{¶6} Detective Purdin explained to Adams County Sheriff's Detective Brian Newland that appellant said they could check his vehicle. Purdin asked appellant, "how much you got? A couple balls?" Appellant replied, "I wasn't going to sell it. I mean, so you thought I was selling it?" Purdin then gives appellant his sandwich and asks, "You got anything in your pockets man? * * * When is the last time you used?" Appellant replied, "this

morning."

{¶7} Initially, Detective Purdin found a hypodermic needle in the center console of appellant's truck.  Purdin then said to Detective Newland, "One thing I checked that center console, but I didn't check under it.  That's kind of a weird spot for that, you might have something.  I don't know what that's about. . . Up under here, under the dash."  Purdin eventually located a black, locked cylindrical container under the dashboard on the driver's side of the vehicle.  The body camera footage shows at 19:20 that Purdin retrieved the black cylinder and said, "What's up with this?  Ever seen that?  Give me your key."  Appellant replied, "ain't got a key for it.  Don't have a key for it.  You'll have to get a warrant for it. . . search warrant.  I don't know what to tell ya."  Purdin instructed Detective Newland, "Check his other pocket."  Appellant said, "You can't just take it without a warrant.  I do know the law."  Newland handcuffed appellant as Purdin replied, "Well, you admitted to using.  You got a needle."  Appellant replied, "You still got to get a search warrant."  Purdin stated, "Key's in your pocket."  Appellant replied, "That don't matter."  Appellant stated, "I'll tell you there's dope in it.  I can't tell you how

much."  When asked "what kind of dope is it," appellant replied, "It's meth," to which Purdin replied, "Well, let me read you your rights."

{¶8}  Detective Purdin testified that he "had noticed earlier that [appellant] had a * * * key on him that * * * reminded me of * * * like a pop machine key."  Appellant "told me I needed to get a search warrant.  I believe that's what he told me."  However, Detective Newland "retrieved that key from Mr. Prater and . . . opened up the lockbox."  At that point, appellant "stated there was drugs in it.  Um, it was at that moment or near that I read him his Miranda rights and then inquired more of him, and uh, stated it was methamphetamine, and that was for his personal use."  Purdin stated he found "three baggies of crystalized substance," and "pieces of a pill or something."

{¶9}  The body camera footage showed that after Detective Purdin advised appellant of his *Miranda* rights, Purdin stated, "That's a lot of dope Jericho.  What's up with these?  Is this heroin in here?  I don't want to overdose."  Appellant replied, "No.  Well, it's Xanax."  When Purdin asked again, "What's this?," appellant replied, "That's meth. . .  methamphetamine, it's all

methamphetamine." After the encounter, Purdin allowed appellant to call his sister to come get him and drive the truck away.

{¶10} On cross-examination, Detective Purdin acknowledged that he or Detective Newland reached into appellant's pocket to obtain the key that Purdin recalled seeing earlier when he checked appellant's pockets for contraband. Purdin also acknowledged that a family member drove the vehicle and appellant from the scene.

{¶11} The State argued that two exceptions to the warrant requirement permitted the warrantless vehicle search. First, the state argued that probable cause existed for the officer to believe the truck contained evidence relevant to a crime and exigent circumstances existed because (1) the officer observed appellant operate his truck without a valid license, and (2) appellant admitted he used methamphetamine earlier that day. Second, the state argued that appellant consented to the search of his truck, including consent to search the container found within the truck. At the hearing, although counsel conceded that appellant consented to the vehicle search, appellant challenged the removal of the key from appellant's pocket and the opening of the locked container after appellant withdrew his consent. After hearing the evidence,

the trial court overruled appellant's motion to suppress evidence without analysis.

{¶12} At the jury trial, Detective Purdin testified that on August 26, 2021, he observed appellant operate a vehicle while under a license suspension.  Purdin confirmed the suspension with dispatch and, when he approached appellant at a gas station, appellant acknowledged his license suspension.  Purdin asked appellant for his registration and asked if "anything in the vehicle . . .  shouldn't be in there."  Appellant stated, "there wasn't.  At one point he . . . gave me permission to search the vehicle."  At that time, Detective Newland arrived to assist, and they searched appellant's vehicle.  They located a hypodermic needle in the front console and found a lock box under the driver's side dashboard.  When asked whether appellant told them the contents of the box, Purdin stated, "I believe he told me it was drugs."

{¶13} On cross-examination, Detective Purdin acknowledged that he checked appellant's license about 30 minutes before he observed him and acknowledged that Detective Newland removed the key from appellant's pants without appellant's permission.  Purdin testified

that the lab reports state that Exhibit 11 weighed 11.770 grams and Exhibit 12 weighed 18.885 grams.

**{¶14}** Ohio Bureau of Criminal Investigation (BCI) Forensic Scientist Stanton Weasler testified that BCI did not complete the initial testing when they received the sample. Because of a backlog of drug cases, the Attorney General's Office outsourced some cases to other labs, including Hamilton County. After Brian Scouting with Hamilton County performed the initial testing under a contract with BCI, BCI's evidence transport technicians transported the evidence from Hamilton County to BCI. Under the outsourcing policy, evidence will be "retested" if testimony is necessary. Therefore, Weasler testified about both the Hamilton County test results and the BCI test results. Weasler noted that, although both labs identified the substance as methamphetamine, Hamilton County's test resulted in a lower weight because the Hamilton County lab stops "testing as soon as they get to the relevant . . . penalty threshold . . . So out of three bags of . . . crystalline substance, Mr. Scott only weighed . . . and analyzed two of them, and I weighed and analyzed all three." Thus, that is the reason Hamilton County's weight reflects 18.885 grams while BCI's reflects

23 grams, both exceeding the bulk amount.

{¶15} At the close of the State's case, the trial court denied appellant's Crim.R. 29 motion for judgment of acquittal.

{¶16} Appellant testified that on August 26, 2021, he drove to Portsmouth because his "kids' mom had went to treatment the day before."  After appellant took cigarettes to her, he visited a McDonald's restaurant near Peebles, then stopped at a gas station.  While appellant pumped gas, Detective Purdin "pulled in behind me."

{¶17} Appellant stated that he interacted with Detective Purdin in the past, primarily regarding license suspensions.  Appellant also stated, "whether I've had a license or not, there's never been one time that he's never searched me.  Every time he has ever had any contact with me, I've been searched.  Whether I give him permission or not, that's the reason I gave him permission to search, because he was going to regardless."  Appellant explained, "I gave him permission at the beginning to search my vehicle.  Uh, when he found the container, uh, I told him to get a warrant."  Appellant noted that his pants pocket held the key to the container and he did not voluntarily hand it to officers, nor give permission to officers to retrieve it from his pocket.

{¶18} On cross-examination, appellant admitted that he (1) owned the vehicle he drove on August 26, 2021, (2) drove with a suspended driver's license, (3) gave permission to search the vehicle, (4) owned the black cylinder found in the vehicle, (5) owned part of the methamphetamine in the cylinder, (6) possessed the drugs for personal use, (7) used methamphetamine earlier that morning, (8) possessed the key to unlock the cylinder, and (9) withdrew his consent or permission to search after officers found the cylinder. Appellant also disputed the weight of the methamphetamine, and argued that two of the three bags belonged to his girlfriend. Appellant further admitted, over objection, that in 2018 he entered a guilty plea and had been convicted of fifth-degree felony aggravated drug possession. At this juncture the defense rested and the trial court overruled appellant's renewed Crim.R. 29 motion for judgment of acquittal.

{¶19} After the State's closing argument, the trial court sua sponte raised the issue that Exhibit 10 (appellant's 2018 aggravated drug possession guilty plea) should not have been admitted into evidence. The trial court overruled counsel's mistrial motion, stated that Exhibit 10 would not be admitted into

evidence, and instructed the jury:

> So, ladies and gentlemen of the jury, there was an inquiry, uh, when the defendant was on the witness stand in regard to a prior offense. Uh, the court, uh, has addressed this matter with the counsel and I instructed the jury and you can determine if you can follow this instruction, that as a juror in your deliberations, you would not be permitted. You would not be permitted to consider for any reason the testimony in regard to the prior conviction. And you must purge that as if never heard. You must only make your decision and your verdict based upon the relevant evidence that you determine as the trier of fact as relates to this allegation, you must disregard any prior allegation or suggestion of conviction. I wanna give you a moment to think about that.
>
> Is there any juror that does not understand the court's instruction? You must strike from all consideration and neither think about nor discuss any testimony or suggestion of evidence and State's Exhibit '10' would not be admitted into evidence. Is there any juror that cannot follow that instruction? And if so, we would ask that you indicate by raising your hand. No such indication.

{¶20} After the trial court instructed the jury to "strike from all consideration" Exhibit 10 and related testimony, it appears that the packet of exhibits considered during the jury's deliberations inadvertently included Exhibit 10.

{¶21} After deliberation, the jury (1) found appellant guilty of aggravated possession of drugs in violation of R.C. 2925.11(A), and (2) found that the amount of methamphetamine equaled or

exceeded five times the bulk amount, but less than fifty times the bulk amount.

**{¶22}** After the trial court considered the pertinent sentencing statutes and factors, the court sentenced appellant to (1) serve a 5-year minimum up to 7 ½ - year maximum prison term, (2) serve a mandatory 18-month to 3-year post-release control term, (3) pay a mandatory $2,500 fine with the minimum mandatory $7,500 fine waived due to future indigency per mandatory incarceration, and (4) pay costs.  This appeal followed.

I.

**{¶23}** In his first assignment of error, appellant asserts that the trial court erred when it did not suppress the evidence obtained during the search of his vehicle.  In particular, appellant argues that he did not consent to the search, that Detective Purdin did not have probable cause for the warrantless search, and the search was invalid under other warrant exceptions.

**{¶24}** Appellee, however, contends that Detective Purdin possessed a reasonable suspicion for the vehicle stop and possessed probable cause for the warrantless search of appellant's vehicle

and the hidden container under the dashboard.  Appellee further argues that appellant voluntarily consented to the search and revoked consent after Purdin lawfully seized the container.

**{¶25}** Generally, "appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Codeluppi*, 2014-Ohio-1574, ¶ 7, citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8; *State v. Bennett*, 2021-Ohio-937, ¶ 9 (4th Dist.).  The trial court is best positioned to evaluate witness credibility at a suppression hearing.  *State v. Dunlap*, 73 Ohio St.3d 308, 314 (1995), *State v. Flanders*, 2007-Ohio-503, ¶ 11 (4th Dist.).  Therefore, we must uphold the trial court's findings of fact if competent, credible evidence in the record supports them.  *Dunlap, supra*.  However, we conduct a de novo review of the trial court's application of the law to the facts.  *State v. Roberts*, 2006-Ohio-3665, ¶ 100, *Burnside* at ¶ 8, *State v. Anderson*, 100 Ohio App.3d 688, 691, (4th Dist. 1995).

**{¶26}** The Fourth Amendment to the United States Constitution ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The search of the vehicle and the cylinder found therein

occurred without a warrant, and warrantless searches are per se unreasonable unless the search falls under one of the " 'jealously and carefully drawn' " exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971), quoting *Jones v. United States*, 357 U.S. 493, 499 (1958). Thus, when a defendant challenges a warrantless search, the State carries the burden to show, by at least a preponderance of the evidence, that the search and/or seizure fits within one of the defined exceptions to the warrant requirement. *See Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988), citing *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978); *State v. Banks-Harvey*, 2018-Ohio-201, ¶ 18, citing *Athens v. Wolf*, 38 Ohio St.2d 237, 241 (1974).

### A. Consent

**{¶27}** We begin with the search of appellant's vehicle. Appellant first challenges the voluntariness of his initial consent under the totality of the circumstances. Appellant argues that officers ordered him out of his vehicle, questioned him several times about drugs in the vehicle, and questioned him about why he lied about from where he traveled. Further, appellant submits that

Detective Purdin acknowledged that appellant could not leave prior to the search.  Moreover, appellant contends that Purdin unlawfully extended the stop beyond the initial stop for driving under suspension, noting that after a brief conversation about appellant's driver's license, Purdin immediately asked if the car contained anything that "shouldn't be there."  Finally, appellant claims that even if he consented to the vehicle search, he revoked that consent prior to officers finding the suspected contraband.

**{¶28}** Police officers do not need a warrant, probable cause, or even a reasonable, articulable suspicion to search when a suspect voluntarily consents to a search.  *See Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219; *State v. Comen* (1990), 50 Ohio St.3d 206, 211.  Consent to a search is "a decision by a citizen not to assert Fourth Amendment rights."  Katz, Ohio Arrest, Search and Seizure (2004 Ed.), 341, Section 17:1.  The United States Supreme Court has acknowledged the importance of consent searches in police investigations and stated that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal.  *Schneckloth, supra,* 412 U.S. at 227-228.  Moreover, the Supreme Court has reaffirmed the principle that "[p]olice officers

act in full accord with the law when they ask citizens for consent" in *United States v. Drayton*, 536 U.S. 194, 207 (2002). Here, however, appellant contends (1) any consent he gave for the search of his vehicle was involuntary, and (2) that if he did consent, he limited or withdrew that consent prior to the discovery of the methamphetamine in the locked cylinder.

**{¶29}** To establish the consent exception to the probable cause and warrant requirements of the federal and Ohio constitutions, the State has the burden to establish by "clear and positive" evidence that "consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543 (1968); *State v. Posey*, 40 Ohio St.3d 420, 427 (1988). Therefore, whether consent to search is voluntary or the product of duress or coercion is ordinarily a question of fact to be determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 219, 248-249. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness- what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991), citing *Illinois v. Rodriguez*, 497 U.S. 177, 183-

189 (1990).

**{¶30}** Further, *Schneckloth* sets forth seven factors for a court to consider when it determines whether consent is voluntary including: (1) the suspect's custodial status and the length of the initial detention; (2) whether the suspect gave consent in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the suspect's words and conduct; (5) the extent and level of the suspect's cooperation with police; (6) the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law"; and (7) the suspect's education and intelligence. *Id.* at 248-249.

**{¶31}** In the case sub judice, we cannot conclude that the trial court erred when it found that appellant initially consented to the search of his vehicle. Law enforcement officers detained appellant in a nonviolent manner in a public setting, only briefly detained appellant before officers requested consent to search, and did not engage in threats, promises, or coercive procedures. Furthermore, appellant appeared to be cooperative with police, did not appear to be a newcomer to the law, appeared to be aware of his right to refuse to consent, and appellant's education and intelligence have

not been questioned.  It appears, however, that appellant later withdrew his consent with regard to the locked container search. Appellant contends that when officers found the locked container, "it was not immediately apparent what was inside."  Appellant notes that it could have contained money, jewelry, prescription medication, important documents, etc.  Appellant argues that once he revoked consent, officers should have ended the search rather than to take the key from appellant's person and open the container.  Appellee contends, however, that appellant voluntarily consented to the search and offered his purported revocation of consent only after officers lawfully seized the container.

**{¶32}** In general, an individual may limit the scope of consent to search and even may choose to revoke that consent entirely. *See, e.g., United States v. Drayton*, 536 U.S. 194, 207; *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999); *Jimeno, supra*, 500 U.S. at 252; *State v. Riggins*, 2004-Ohio-4247, ¶ 26 (1st Dist.). The prevailing rule among Ohio courts is that consent to a search may be limited in time, duration, area, and intensity or may revoked at any time, even after the search has begun.  *See Lakewood v. Smith*, 1 Ohio St.2d 128, 130 (1965); *State v. Crawford*, 2003-

Ohio-902, (2nd Dist.); *State v. Mack*, 118 Ohio App.3d 516, 519 (6th Dist. 1997); *State v. Rojas*, 92 Ohio App.3d 336, (8th Dist. 1993); *State v. Arrington*, 96 Ohio App.3d 375 (12th Dist. 1994); *State v. Gomez*, 2019-Ohio-481 (5th Dist.); *Riggins* at ¶ 27.

**{¶33}** Thus, whether a search is authorized by warrant or consent, the terms of authorization limit the scope of the search. *Walter v. United States*, 447 U.S. 549, 656 (1980). Consequently, when a suspect places an express limitation on the scope of a consensual search, those limitations must be observed. For example, when a suspect tells police, "The search is over. I am calling off the search," the suspect revoked his consent. *United States v. Dichiarinte*, 445 F.2d 126, 128-129 (7th Cir. 1971). *See also Painter v. Robertson*, 185 F.3d at 567 (although officers obtained consent to enter and search, search should have terminated instantly upon Painter's revocation of consent).

**{¶34}** Furthermore, a suspect may withdraw his or her consent by actions. For example, a suspect's actions may communicate the limitation of a search, such as opening a door and then closing it. *See State v. Robinson*, 103 Ohio App.3d 490, 495 (1st Dist. 1995). *See also Commonwealth v. Fox*, 48 S.W.3d 24 (Ky. 2001) (defendant

originally expressly consented to search of bags in truck bed, but later rescinded consent when he took the bag and pushed it to the front where the officer could not see it; thus police needed a warrant to search the bag.); *State v. Jordan*, 1995 WL 137033 (2d Dist. Mar. 31, 1995) (defendant withdrew consent when blocked police officer's hand from reaching into his pants pocket); *United States v. Ibarra*, 731 F.Supp. 1037, 1039 (D.Wyo.1990)(defendant terminated consent when he closed and locked vehicle trunk after prior consensual search); *Cooper v. State,* 480 So.2d 8, 11 (Ala.Crim.App. 1985)(defendant withdrew consent when he locked plane doors after consensual search); *People v. Hamilton*, 168 Cal.App.3d 1058 (1985)(attempt to close bedroom door is "direct, positive" act inconsistent with consent).

**{¶35}** In the case sub judice, we observe that if a suspect may withdraw consent by express words or actions, then appellant withdrew his consent when he stated, "You can't just take it [the key in his pocket to the locked container] without a warrant. * * I do know the law. * * * You still have to get a search warrant."

**{¶36}** Appellee argues, however, that an item properly seized before a suspect withdraws consent is not subject to suppression

under the Fourth Amendment. *Riggins*, *supra,* at ¶ 26; *State v. Moscoso,* 2018-Ohio-2877, ¶ 26 (5th Dist.). However, in the instant case although Detective Purdin seized the locked container prior to appellant's statement regarding a warrant, the officers could not search the locked container without appellant's key. Therefore, the evidence reveals that appellant unequivocally withdrew his consent as it pertained to the locked container.

{¶37} Thus, we conclude that the evidence adduced at the suppression hearing and at trial reveals that appellant did initially consent to the search of his vehicle, but later withdrew consent as it pertained to his locked container.

## B. Probable Cause

{¶38} The appellee also asserts that probable cause justified the warrantless vehicle search and the corresponding search of the locked container.[3] An investigative stop does not violate the

---

[3] It is interesting to recognize that in the case sub judice the officer stopped appellant for driving under a license suspension. During the course of the encounter, and after the vehicle search, the officer permitted appellant's family member to come to the scene and drive away with appellant and his vehicle. However, the officer could have chosen to make a custodial arrest

23
Fourth Amendment if an officer has a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). For example, an officer may make an investigatory stop solely on the knowledge that the vehicle's owner does not possess a valid driver's license. *State v. Elliott*, 2009-Ohio-6006, ¶ 17 (4th Dist.).

**{¶39}** In the case sub judice, Detective Purdin testified that he (1) received information from Peebles police officer (Nicholas) that day that appellant drove a red Dodge pickup truck with a suspended driver's license and attempted to sell drugs from his truck, (2) received a call from Laura Dryden that day who stated that appellant stopped at her place of business in West Union and attempted to sell her methamphetamine and attempted to obtain hypodermic needles from her, and (3) confirmed appellant's driver's license suspension with dispatch prior to the vehicle stop.

**{¶40}** First, Detective Purdin's personal knowledge of

---

for the license violation and conducted a search incident to appellant's custodial arrest, including a search of the vehicle and any containers found within the vehicle. A search incident to custodial arrest does not require independent probable cause to search. *Arizona v. Gant*, 556 U.S. 332, (2009).

appellant's license suspension provided reasonable suspicion for the initial investigative stop.  *See State v. Harrington,* 2003-Ohio-3636 (5th Dist.)(officer's personal knowledge specific nature of defendant's driving status provided reasonable suspicion); *State v. Jones,* 2004-Ohio-1535 (7th Dist.)(when officer knows vehicle's owner possesses suspended operator's license and draws rational inference that vehicle's owner is likely to be operating the vehicle, reasonable suspicion exists to justify investigatory stop; *Tallmadge v. McCoy,* 96 Ohio App.3d 604 (9th Dist.)(when officer knows vehicle's owner has suspended operator's license and draws rational inference that vehicle's owner is likely to be operating vehicle, sufficient reasonable suspicion exists to justify investigatory stop), *State v. Yeager*, 1999 WL 769965 (4th Dist.)(because officer had information regarding vehicle owner's suspended license, officer possessed reasonable suspicion to stop the vehicle, even without independent identification of driver); *State v. Greathouse,* 2010-Ohio-1209 (8th Dist.)(because it is reasonable to infer vehicle's driver may be its registered owner, even absent a physical description or other corroboration, officer who learns registered vehicle's owner lacks driving privileges is

permitted to stop operator to investigate whether operator is licensed).  Taken together, we conclude that the facts adduced at the suppression hearing firmly established reasonable suspicion for an investigative stop.

**{¶41}** The next consideration is whether, after the initial investigative stop, probable cause existed to search appellant's vehicle.  Under the automobile exception, a warrantless search of a lawfully stopped automobile is reasonable within the meaning of the Fourth Amendment when law enforcement has probable cause to believe the vehicle contains contraband and exigent circumstances necessitate a search or seizure.  *State v. Welch*, 18 Ohio St.3d 88, 91 (1985); *State v. Young*, 2012-Ohio-3131, ¶ 34 (12th Dist.); *State v. Windle*, 2017-Ohio-7813, ¶ 36 (4th Dist.).  Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place.  *State v. Bostwick*, 2011-Ohio-3671, ¶ 25 (4th Dist.); *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

**{¶42}** The Fourth Amendment's automobile exception justifies "a warrantless search of a lawfully stopped vehicle if [officers] have probable cause to believe that the vehicle contains contraband."

*State v. Mitchell*, 2022-Ohio-2564, ¶ 13 (1st Dist.), citing *United States v. Ross*, 456 U.S. 798, 825 (1982), and *State v. Moore*, 90 Ohio St.3d 47, 51 (2000). Warrantless vehicle searches are reasonable given the innate mobility of vehicles, which " 'can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' " *Ross* at 806, quoting *Carroll v. United States*, 267 U.S. 132, 153 (1925). The scope of the search extends to "every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825.

**{¶43}** In the case at bar, Detective Purdin testified that shortly before he encountered appellant, he received information from business owner Laura Dryden that appellant attempted to sell drugs to her and sought hypodermic needles from her earlier that day. Courts in Ohio have held that "[i]n the case of a citizen-informant who is victimized or merely witnesses a crime and reports it out of a sense of civic duty, the police may be entitled to presume that the informer is reliable." *State v. Shepherd*, 122 Ohio App.3d 358, 366 (2d Dist. 1997), citing *Toledo v. Elkin*, 68 Ohio Misc.2d 59 (1994)), citing *United States v. Harris,* 403 U.S. 573 (1971); *State v. Carstensen*, 1991 WL 270665 (2d Dist. 1991);

*see also State v. Carroll,* 2005-Ohio-3093, ¶ 22 (11th Dist.).

Thus, an officer may derive his or her knowledge from an informant's tip. In *State v. Colbert,* 1990 WL 20095 (1st Dist.), the court held that:

> * * * [P]olice have probable cause to conduct a search for contraband when detailed information provided to them by a confidential but reliable informant is subsequently corroborated, in some significant combination, with respect to the name or physical description of a suspect, the location of the illegal sale, the time of the sale, the description of the automobile driven by the suspect or the car's license plate numbers.

*Id.*

**{¶44}** The First District concluded that probable cause existed to justify Colbert's warrantless arrest and seizure and underscored that (1) the officer testified that the informant had proved to be reliable numerous times in the past, (2) the suspect's identity, location of illegal activity and description of the suspect's car corroborated the details of the tip, and (3) the informant observed the suspect holding the contraband immediately before the arrest. The court noted that the fact that police obtained the information one week prior to the arrest and search did not render it unreliable, because the informant's account involved ongoing

activity.  *Id.* at *2.

**{¶45}** In *State v. Walker,* 1998 WL 429121 (10th Dist.), the Tenth District held that the confidential informant's tip, which included the name and description of the defendant, the location and time of the arranged transaction, a description of the defendant's vehicle, as well as the informant's subsequent allegation at the scene that he observed defendant in possession of cocaine, established probable cause.  *Id.* at *6.  *See also State v. Darding*, 1987 WL 11863 (1st Dist.), (search of defendant, which preceded arrest, did not constitute unlawful search incident to arrest; probable cause established based on reliable informant's tip, which set forth description of defendant, his attire, the female to whom defendant would transfer drugs, transaction location and fact that drugs would be found in defendant's front vest pocket.).  In the case sub judice, we believe that Laura Dryden's call to Detective Purdin earlier that day to inform him that appellant had "attempted to sell methamphetamine to her and attempted to obtain hypodermic needles from her," provided probable cause for Purdin to search appellant's vehicle.  In addition to Dryden's tip, Detective Purdin also relied on an officer's tip.

Earlier that day, Peebles Police Officer called Purdin and stated that he "had received complaints that [appellant] was driving around on a suspended license in a red Dodge pickup truck . . . selling drugs." The specificity of appellant's name, the alleged illegal activity, and information concerning appellant's license suspension provided further probable cause for officers to search appellant's vehicle. Furthermore, Purdin observed a hypodermic needle in the truck's console.

**{¶46}** In *State v. Kelley*, 2011-Ohio-3545 (4th Dist.), we held that an officer may rely upon information collectively known to the law enforcement officers involved in the search or investigation. *Id*. at ¶ 26, citing *State v. Cook*, 65 Ohio St.3d 516, 521 (1992). "An officer need not have knowledge of all of the facts necessary to justify [a search], as long as the law enforcement body as a whole possesses such facts and the detaining officer reasonably relies upon those who posses the facts." *Id*., citing *Cook.* In the case at bar, Detective Purdin relied on both a tip from a citizen informant and information provided by law enforcement. Moreover, appellant admitted to Purdin that he "used methamphetamine earlier that morning," "knew his license was under suspension," and Purdin

testified that he had "several prior dealings" with appellant, "usually drug-related." *See State v. Skinner,* 2005-Ohio-4273, ¶ 33 (10th Dist.)(officer arrested defendant with large amount of powdered cocaine approximately two weeks prior).

**{¶47}** Here, for all of the reasons cited above, we believe that these facts support the probable cause determination that appellant's vehicle likely contained contraband or evidence of a crime. Thus, we conclude that probable cause existed to search the vehicle, thus justifying the warrantless search of the vehicle under the automobile exception to the Fourth Amendment.

**{¶48}** As set forth above, under the "automobile exception" to the warrant requirement, police officers may perform a warrantless search of a vehicle so long as they have probable cause to believe the vehicle contains contraband or evidence of a crime. *See State v. Robinson,* 2016-Ohio-905 (4th Dist.) ¶ 26, citing *State v. Chaffins,* 2014-Ohio-1969, ¶ 18 (4th Dist.), and *State v. Williams,* 2013-Ohio-594, ¶ 25 (4th Dist.). However, although officers may have probable cause to search appellant's vehicle, appellant asserts that officers lacked probable cause to search the locked container.

{¶49} After some evolving jurisprudence, in *California v. Acevedo,* 500 U.S. 565 (1991), the United States Supreme Court held that "police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Id.* at 580. Officers observed a man pick up a FedEx package suspected to contain marijuana and transport it to an apartment. After they observed the man leave an apartment and drop into a trash bin the package and paper that had contained the marijuana, one officer left the scene to obtain a search warrant. Shortly after, officers observed another man leave the apartment carrying a blue knapsack, which appeared to be half full. Officers stopped him, searched the knapsack, and found 1 ½ pounds of marijuana. *Id.* at 567. Twenty minutes later, Acevedo entered the apartment, stayed about ten minutes, and reappeared carrying a brown paper bag that appeared full. Officers noticed that the bag appeared to be the size of one of the wrapped marijuana packages sent from Hawaii. Acevedo walked to a vehicle, placed the bag in the trunk of the car, and started to drive away when officers in a marked police car stopped him, opened the trunk and the bag, and found marijuana. *Id.*

{¶50} The Court noted that *United States v. Ross* held that "closed containers encountered by the police during a warrantless search of a car pursuant to the automobile exception could also be searched. Thus, this Court in *Ross* took the critical step of saying that closed containers in cars could be searched without a warrant because of their presence within the automobile." *Id.* at 572.

{¶51} The court continued:

> This Court in *Ross* rejected *Chadwick* 's distinction between containers and cars. It concluded that the expectation of privacy in one's vehicle is equal to one's expectation of privacy in the container, and noted that "the privacy interests in a car's trunk or glove compartment may be no less than those in a movable container." 456 U.S., at 823, 102 S.Ct., at 2172. It also recognized that it was arguable that the same exigent circumstances that permit a warrantless search of an automobile would justify the warrantless search of a movable container. *Id.*, at 809, 102 S.Ct., at 2165. In deference to the rule of *Chadwick* and *Sanders*, however, the Court put that question to one side. *Id.*, at 809–810, 102 S.Ct., at 2165. It concluded that the time and expense of the warrant process would be misdirected if the police could search every cubic inch of an automobile until they discovered a paper sack, at which point the Fourth Amendment required them to take the sack to a magistrate for permission to look inside. We now must decide the question deferred in *Ross*: whether the Fourth Amendment requires the police to obtain a warrant to open the sack in a movable vehicle simply because they lack probable cause to search the entire car. We conclude that it does not.

**{¶52}** Moreover, the Court noted that "[t]o the extent that the *Chadwick-Sanders* rule protects privacy, its protection is minimal. Law enforcement officers may seize and hold a container until they obtain a search warrant. *Acevedo* at 575, citing *Chadwick*, 433 U.S., at 13. "Since the police, by hypothesis, have probable cause to seize the property, we can assume that a warrant will be routinely forthcoming in the overwhelming majority of cases." *Sanders*, 442 U.S., at 770, 99 S.Ct., at 2596 (dissenting opinion).

**{¶53}** In *Wyoming v. Houghton*, 526 U.S. 295 (1999), the Court further reduced protections for containers in cars when it held that probable cause to believe that the driver of a vehicle has illegal drugs in the car gives the police the authority to conduct a warrantless search of a passenger's purse found on the backseat floor of the passenger compartment, even if the police have no particularized reason to believe drugs are in the passenger's purse. *See* Lee, *Package Bombs, Footlockers and Laptops: What the Disappearing Container Doctrine Can Tell Us About the Fourth Amendment,* 100 JCRLC 1403, 1441 (2010).

**{¶54}** Although the case sub judice involved a locked container rather than simply a closed container, we believe that *Acevedo*

supports our conclusion that because probable cause existed for officers to search appellant's vehicle, probable cause extended to the search of the locked container because the permissible scope of the search has been extended to items found inside a vehicle.  *See State v. Vega*, 154 Ohio St.3d 569, 2018-Ohio-4002, ¶ 18 (sealed envelopes); *State v. Kumuhone*, 8th Dist. Cuyahoga No. 112272, 2023-Ohio-2586, ¶ 28 and *State v. Fritz*, 12th Dist. Clermont Nos. CA2019-12-094, CA2019-12-095, 2020-Ohio-5231, ¶ 35 (a backpack); *State v. Sullivan*, 12th Dist. Preble No. CA2018-10-016, 2019-Ohio-2279, ¶ 23 (a locked tool box).

**{¶55}** Moreover, other state and federal cases support our conclusion.  For example, in *State v. Wilson,* 478 N.J.Super. 564, (2024), the Superior Court of New Jersey, Appellate Division, held:

> It seems clear under the Fourth Amendment that no distinction is drawn between locked and unlocked containers for purposes of the automobile exception.  *See United States v. Mazzone*, 782 F.2d 757, 760 (7th Cir. 1986) ("[I]f the police have probable cause to believe that there is contraband or other lawfully seizable material anywhere in the car they can search for it even if it is in a sealed container, or in a closed or even locked compartment such as the glove compartment or the trunk.").  In *Ross*, the United States Supreme Court explained, "[t]he scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search

and the places in which there is probable cause to believe that it may be found." 456 U.S. at 824, 102 S.Ct. 2157. Further, "[t]he scope of a warrantless search based on probable cause is no narrower ... than the scope of a search authorized by a warrant supported by probable cause." *Id.* at 823, 102 S.Ct. 2157.

**{¶56}** The court further stated, "[e]ven accepting that motorists who take the precaution of locking a glove box have a higher subjective expectation of privacy in its contents than if they had left the glove box unlocked, our courts have never equated that heightened expectation to the expectation of privacy in a home." *Id.*

**{¶57}** In *United States v. Marsh,* 2020 WL 758815 (M.D.Tenn Feb 14, 2020), a district court upheld a warrantless search when officers executed a search for marijuana based on probable cause and the owner or occupants of the car refused to provide means of opening the glovebox. The court concluded, "the fact that the search was warrantless does not alter the analysis. Once probable cause for the search of an automobile is established, the scope is the same as if the Officers were acting pursuant to a warrant." *Id.* at *4, citing *Ross,* 456 U.S. at 823. Therefore, the court held that officers did not act unreasonably when they pried open the

glovebox.

{¶58} In *State v. Reis,* 2014 ND 30, the Supreme Court of North Dakota held that when police officers have probable cause to believe a vehicle contains contraband and the automobile exception to the warrant requirement applies, officers may search the vehicle and any containers within the vehicle that may contain the object of the search, citing *Ross*, *supra*, at 800. *Id.* at ¶ 18. *See also, United States v. Sena,* 2024 WL 3677601 (D.N.M.)(locked containers are equally subject to search as unlocked containers), *Carter v. Parris,* 910 F.3d 835 (6th Cir. 2018)(fact that lockbox is locked container inside the car makes no difference as Supreme Court long ago dispensed with categorical distinction between cars and containers within cars.); *People v. Ellis*, 62 N.Y.2d 393, 398 (1984) (automobile exception applies to closed, and even locked, containers and compartments within a car.) Thus, in addition to probable cause to search appellant's vehicle, we conclude that probable cause existed to search the locked container found therein.

{¶59} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II.

**{¶60}** In his second assignment of error, appellant asserts that insufficient evidence supports his conviction and his conviction is contrary to the manifest weight of the evidence.

**{¶61}** A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, syllabus (1997); *State v. Blevins*, 2019-Ohio-2744, ¶ 18 (4th Dist.). When reviewing the sufficiency of the evidence, an appellate court's inquiry focuses primarily on the adequacy of the evidence; that is, whether the evidence, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991); State v. Brock*,* 2024-Ohio-

1036, ¶ 13 (4th Dist.).

{¶62} Furthermore, under the sufficiency of the evidence standard a reviewing court does not assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring). Therefore, when an appellate court reviews a sufficiency of the evidence claim, the court must construe the evidence in a light most favorable to the prosecution. *See, e.g., State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162; *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶63} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins*, 78 Ohio St.3d at 387. "The question to be answered when a manifest weight issue is raised is whether 'there is substantial evidence upon which a jury could

reasonably conclude that all the elements have been proved beyond a reasonable doubt.' " *State v. Leonard*, 2004-Ohio-6235, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193-194 (1998), citing *State v. Eley*, 56 Ohio St.2d 169, syllabus (1978). A court that considers a manifest weight challenge must " 'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.' " *State v. Beasley*, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 328. However, the reviewing court must bear in mind that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67 (2001); *State v. Murphy*, 2008-Ohio-1744, ¶ 31 (4th Dist.). " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' " *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20, quoting *State v. Konya*, 2006-Ohio-6312, ¶ 6 (2d Dist.), quoting *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug. 22, 1997).

{¶64} Generally, an appellate court will defer to the trier of fact on issues of evidence weight and credibility, as long as a

rational basis exists in the record for the fact-finder's determination. *State v. Picklesimer*, 2012-Ohio-1282, ¶ 24 (4th Dist.); *accord State v. Howard*, 2007-Ohio-6331, ¶ 6 (4th Dist.) ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight."). Accordingly, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *Accord Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th Ed. 1990) (a judgment is not against the manifest weight of the evidence when " ' "the greater amount of credible evidence" ' " supports it).

**{¶65}** Consequently, when a court reviews a manifest weight of the evidence claim, a court may reverse a judgment of conviction only if it appears that the fact-finder, when it resolved the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at

387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *accord McKelton* at ¶ 328. Finally, a reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Clinton*, 2017-Ohio-9423, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483 (2000).

{¶66} Appellant asserts that the prosecution failed to adduce sufficient evidence to support his drug possession conviction. In particular, appellant contends that, although he admitted at trial that he possessed the methamphetamine found inside the black cylinder inside his vehicle, he denied that he possessed 23.67 grams of methamphetamine and claimed only one of three bags of methamphetamine found inside the container belonged to him. He further claims that "no forensic evidence was offered linking Mr. Prater to the drugs," and argues that it is unknown how long the container had been inside of the vehicle or how long the drugs had been inside of the container.

{¶67} R.C. 2925.11(A) sets forth the essential elements of

aggravated possession of drugs: No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog. In the case sub judice, both Detective Purdin's testimony and the body camera footage played for the jury established that the black cylinder found under the dashboard of a vehicle owned and operated by appellant contained methamphetamine. Moreover, Ohio Bureau of Criminal Investigation Forensic Scientist Stanton Wheasler testified that the bulk amount for a schedule II-controlled substance, including methamphetamine, is three grams and that the amount of methamphetamine in this case equaled or exceeded five times the bulk amount as the methamphetamine weighed 23.67 grams.

**{¶68}** Appellant also contends that his conviction for aggravated drug possession is against the manifest weight of the evidence. As noted above, in a manifest weight review, we must "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice." *Thompkins*, 78 Ohio St.3d 380, 387 (1997). Once again, Detective Purdin's testimony

and body camera footage established that appellant possessed the methamphetamine found inside of the container inside of the truck he owned and had been driving while under suspension prior to Detective Purdin's stop. In fact, as appellee points out, when asked about the contents of the cylinder, appellant stated, "methamphetamine, it's all methamphetamine."

**{¶69}** Consequently, in the case sub judice, when we weigh the evidence adduced at trial and all reasonable inferences therefrom, we cannot conclude that the trier of fact lost its way. Here, the evidence revealed that appellant possessed the requisite amount of methamphetamine. The trier of fact considered this evidence, found appellant guilty of aggravated possession of drugs in violation of R.C. 2925.11(A), and further found that the amount of methamphetamine equaled or exceeded five times the bulk amount but less than fifty times the bulk amount. Thus, in view of the foregoing, we conclude that appellant's conviction for aggravated drug possession is not against the manifest weight of the evidence.

**{¶70}** Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III.

{¶71} In his final assignment of error, appellant asserts that the trial court erred when it allowed the State to impeach him with a prior conviction that does not constitute an impeachable offense. During appellant's cross-examination, and over his counsel's objection, the State impeached appellant with a prior conviction for fifth-degree felony possession of drugs. The trial court, however, later acknowledged the improper admission, but denied counsel's mistrial request and gave a curative instruction. The prosecution asserts that a jury is presumed to follow a trial judge's instructions, including curative instructions, and cites *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). Further, the State refers to this as a brief, isolated remark that did not prejudice appellant.

{¶72} In general, the grant or denial of a motion for a mistrial rests in a trial court's sound discretion and should not be disturbed on appeal absent an abuse of that discretion. *State v. Houk,* 2020-Ohio-1547, ¶ 9 (4th Dist.), citing *Treesh*, *supra,* 90 Ohio St.3d at 480 (2001). "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer

45

possible."  *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991).

**{¶73}** As appellee points out, the Supreme Court of Ohio has held that a brief, isolated remark, followed promptly by a curative instruction, does not generally necessitate a mistrial.  *State v. Trimble*, 2009-Ohio-2961 (evidence of prior conviction inadmissible, trial court sustained objection, and instructed jury to disregard answer, mistrial not required as fair trial still possible); *State v. Meddock*, 2017-Ohio-4414, ¶ 48 (4th Dist.)(trial court twice instructed jury to disregard testimony stricken from record); *Treesh*, 90 Ohio St.3d at 482(because trial court immediately sustained defense counsel's objection and prohibited prosecutor from pursuing the line of inquiry, trial court did not err in overruling Treesh's motion for mistrial).

**{¶74}** Our review reveals, however, that the evidence at issue in the case at bar did not constitute a brief, isolated remark followed promptly by a curative instruction.  Instead, appellee improperly impeached appellant with a prior conviction for the same offense for which he was being tried.  It does appear that the trial court did, in fact, give an extensive curative instruction, but inadvertently included the exhibit with other trial exhibits

submitted for the jury's consideration.

**{¶75}** Relevant evidence may include prior convictions, including convictions used for impeachment purposes.  A prior conviction, admissible subject to Evid.R. 609, is relevant to the accused's credibility.  *State v. Moore*, 40 Ohio St.3d 63, 65 (1988).  See Evid.R. 609(A); *State v. Wright*, 48 Ohio St.3d 5, 7 (1990).  "To determine whether the defendant was deprived of a fair trial, we must determine whether, 'absent the improper remark[ ], the jury would have found the appellant guilty beyond a reasonable doubt.' "  *State v. Walburg*, 2011-Ohio-4762, ¶ 52 (10th Dist.), quoting *Columbus v. Aleshire*, 2010-Ohio-2773, ¶ 42 (10th Dist.), citing *State v. Maurer*, 15 Ohio St.3d 239, 267 (1984).  Further, as an appellate court, we must presume that the jury followed the trial court's instructions.  *Walburg* at ¶ 53, citing *State v. Noling*, 2002-Ohio-7044, ¶ 39.

**{¶76}** In the case sub judice, at the close of the State's evidence appellant's counsel made a motion under Crim.R. 29 for judgment of acquittal, which the trial court denied.  Appellant then testified on his own behalf.  During cross-examination, appellant acknowledged that he owned the red truck, drove with a

suspended driver's license, permitted the vehicle search, owned the black cylinder found in the vehicle, and owned at least a portion of the methamphetamine in the container.  Appellant also acknowledged that he used methamphetamine in the morning on August 26, 2021.

**{¶77}** The State then said, "It's not your first run in with this court from drugs, correct?"  Appellant replied, "No, sir."  The State asked, "Been here before, correct?"  Appellant replied, "Yes, sir."  The State asked, "Been convicted of possession of drugs, correct?"  Appellant replied, "Yes, sir."  At that point, counsel objected.  At sidebar, the State pointed to appellant's 2018 conviction for fifth-degree felony aggravated possession of drugs.  The trial court then overruled the objection and permitted questions about the 2018 conviction.

**{¶78}** Later, after the State gave its closing argument and briefly referenced Exhibit 10, the trial court called the parties to a sidebar and stated:

> COURT: Looking at Rule [inaudible], evidence [inaudible] accused has been a convicted of a crime.  Well evidence that the accused has been convicted of a crime [inaudible]. If the crime is punishable by [inaudible] or imprisonment, the excess of one year.  I believe the maximum is one year.

ATTORNEY HASLAM: [inaudible].

COURT: Not in excess of one year.  So I think the court has erred in its ruling on the admissibility of "10."  Your thoughts? Obviously, obviously I, I can advise the jury and admonish them not to consider State's Exhibit "10." Um, and ask if there's anyone that cannot purge that.

ATTORNEY HASLAM: May I see.

COURT: Yeah.  I haven't seen Exhibit "10," but it was suggested that it was a felony of the 5th degree.

ATTORNEY CANTRELL: Let me make sure, let me grab it.

COURT: Thank you.  I don't think it would be used to attack his truthfulness because he's admitted that he believed it was methamphetamine.

ATTORNEY CANTRELL: He is truthful.

COURT: So, my intent is to instruct them.  Would you like to be heard before I give that instruction?

ATTORNEY CANTRELL: I think for the record, I need to ask the court for a mistrial.  Um, I, I didn't acknowledge that it was less than a year, I thought it was any felonies. Um, but now that we are aware of it, I think it likely an error that's detrimental to his case being that he's testified and that the prior conviction, even if directed that they don't understand it or to not, uh, consider it. I, I think it's already been said that he has prior conviction and admitted to it.

ATTORNEY HASLAM: I think a curative instruction, we only not admitted State's "10" along with, uh, striking testimony related to the prior objection is enough.

COURT: So, I'll say this for the record, that I think, uh, certainly it's, uh, is effective representation of the defendant to request the mistrial. I believe that's wholly appropriate. I do believe that, uh, the court is, uh, is going to attempt, I don't believe that another court is going to attempt to instruct the jury, uh, that they shall disregard any testimony, uh, and discussion as to State's Exhibit "10," even with redactions, State's Exhibit "10" will not be admitted into evidence. And with any testimony regarding State's Exhibit "10," uh, and or, uh, prior convictions is irrelevant to this case. The decision must be made only upon those facts constituting this alleged offense.

Uh, so I'm going to, uh, deny your motion for mistrial, but I believe it's, uh, wholly appropriate, uh, in the effect of, uh, representation of your client. And if I get an indication from the jury, I reserve the ability to reverse that ruling in regard to the mistrial if I feel that jurors are, uh, capable of, of purging that from their considerations.

At that point, the court addressed the jury and instructed:

COURT: So, ladies and gentlemen of the jury, there was an inquiry, uh, when the defendant was on the witness stand in regard to a prior offense. Uh, the court, uh, has addressed this matter with the counsel and I instructed the jury and you can determine if you can follow this instruction, that as a juror in your deliberations, you would not be permitted. You would not be permitted to consider for any reason the testimony in regard to the prior conviction. And you must purge that as if never heard. You must only make your decision and your verdict based upon the relevant evidence that you determine as the trier of fact as relates to this allegation, you must disregard any prior allegation or suggestion of conviction. I wanna give you a moment to think about that.

Is there any juror that does not understand the court's instruction? You must strike from all consideration and neither think about nor discuss any testimony or suggestion of evidence and State's Exhibit "10" would not be admitted into evidence. Is there any juror that cannot follow that instruction? And if so, we would ask that you indicate by raising your hand. No such indication.

{¶79} Subsequently, defense counsel gave his closing argument. However, it appears that the exhibits given to the jury inadvertently included State's Exhibit 10 in an envelope marked "Evidence Prater." It is undisputed that State's Exhibit 10 should not have been provided to the jury. The question now is what effect this inadvertent action had on this case, if any.

{¶80} In *State v. Westwood*, 2002-Ohio-2445 (4th Dist.), this court considered a case in which a bag of marijuana had been mistakenly given to the jury. This court noted:

Ohio law is not particularly instructive on the subject of unadmitted evidence that is mistakenly submitted to a jury. The Ohio Supreme Court has touched on this issue, but their opinions provide little guidance. In *State v. Cooper* (1977), 52 Ohio St.2d 163, 180, 370 N.E.2d 725, 736, the Court rejected the argument that reversible error occurred when unadmitted exhibits found their way into the jury room because (1) the record did not definitively show that the exhibits were actually given to the jury and (2) even if they were, any error was harmless in light of the cumulative nature of the evidence in relation to the other evidence adduced at trial. Similarly, in *State v. Grant*

51

(1993), 67 Ohio St.3d 465, 483, 620 N.E.2d 50, 69, the Court held that no error occurred when certain scientific slides, not admitted into evidence, may have been taken into the jury room. The court noted that even if the evidence had appeared in the jury room, the evidence was repetitive of other evidence introduced at trial.

*Westwood* at ¶ 24.

**{¶81}** In *Westwood,* we noted that this court twice considered this particular issue. In *State v. Seymour*, 1993 WL 472875, (4th Dist. Nov. 9, 1993), we held that the presence of unadmitted exhibits in the jury room did not mandate a reversal because (1) overwhelming evidence of guilt existed, and (2) those exhibits were cumulative of other evidence and therefore harmless. Later, in *State v. Wheeler,* 1997 WL 106892 (4th Dist. Mar. 4, 1997), we rejected an argument that sending unadmitted exhibits to the jury room constituted reversible error because defense counsel consented to the procedure. Finally, we recognized that the Eighth District considered the issue in *State v. Allen,* 1983 WL 5914 (8th Dist. Apr. 7, 1983), but found no error because the jury had yet to view the unadmitted exhibits. We further observed in *Westwood* that federal law holds that the jury room must be kept free of evidence not received during trial and its presence, if prejudicial, will

vitiate the verdict. *Westwood* at ¶ 28 (citations omitted). Finally, we cited *Merritt v. Maryland*, 367 Md. 17 (Md.App. 2001), where an application for a search warrant not admitted into evidence made its way into the jury room. The document contained (1) evidence that accused the defendant of other criminal acts, (2) improper opinion evidence that accused the defendant of murder, and (3) improper evidence that bolstered the investigator's credibility. *Id.* at 766. We noted that, despite what the Maryland court described as "overpowering evidence" of guilt, the statements included in the unadmitted application should be deemed so prejudicial as to warrant a new trial. *Id.* at 767.

**{¶82}** In *Westwood*, we also wrote that "[w]hat emerges from these cases is a general consensus that, if unadmitted exhibits are mistakenly given to the jury during deliberation, and if the defendant has suffered prejudice as a result thereof, the conviction cannot stand." *Id.* at ¶ 37. We observed that in *Westwood* the jury sent a note to the trial court to inquire about the significance of the bag of marijuana. Moreover, we explained that the exhibit did not appear to be repetitive of other evidence introduced at trial. We did not, however, address whether

53

prejudice is presumed or whether the onus is on the appellant to affirmatively demonstrate prejudice. Nevertheless, we concluded that Westwood suffered prejudice. *Id.* In the case sub judice, we find no such prejudice.

**{¶83}** In *State v. Houston*, 2010-Ohio-2367 (1st Dist.), the trial court erroneously submitted a copy of an unadmitted police report to the jury. *Id.* at ¶ 6. Houston argued that the police report gave rise to actual prejudice because it (1) mentioned that Houston had been cited for marijuana possession when this had not been raised through trial testimony, (2) the report listed a witness as his next-of-kin when Houston attempted to distance himself from that witness as a trial strategy "to the point of attempting to demonstrate that [the witness] was the true owner of the gun with a motive to plant the gun on Houston," (3) the report listed Houston's address as a residence at which Houston claimed he did not live, and (4) the report stated that Houston had an outstanding warrant for a traffic violation. *Id.*

**{¶84}** The First District observed:

> Ohio law is not particularly instructive on the subject of unadmitted evidence that is mistakenly submitted to a jury." [*State v. Westwood* (May 15, 2002), 4th Dist. No.

01CA50, 2002-Ohio-2445, at ¶ 24.] Unlike federal law, and contrary to Houston's argument, Ohio law does not presume prejudice for unadmitted evidence, but rather takes a case-by-case approach, examining (1) whether the record reflects whether the exhibits were actually given to the jury, and (2) whether the error was harmless in light of the cumulative nature of the evidence in relation to the other evidence adduced at trial. [*Id.*, citing *State v. Cooper* (1977), 52 Ohio St.2d 163, 180, 370 N.E.2d 725.]

The First District deemed the police report harmless because it contained information cumulative of other, properly admitted evidence. *Id.* at ¶ 8. The court concluded that, "in relation to the other evidence adduced at trial," Houston's police report given to the jury contained evidence cumulative of other evidence adduced at trial, and specifically noted the jury did not hear testimony regarding the marijuana possession citation in the police report. *See also State v. Shouse,* 2014-Ohio-4620, ¶ 23 (12th Dist.)(ample evidence against defendant to sustain guilty verdict despite admission of unredacted medical records that contained 5 hearsay statements that identified defendant as perpetrator); *State v. Locklin*, 2006-Ohio-3855, (2d Dist.) (prejudicial effect of unadmitted exhibit mistakenly submitted to jury harmless because exhibit repetitive or cumulative of other evidence introduced at

trial and substantial evidence of defendant's guilt existed); *State v. Adams,* 2008-Ohio- 3136, ¶ 15 (although police report contained some information not presented at trial, other evidence established Adams' guilt and jury indicated they could disregard the police report).

**{¶85}** In the case sub judice, we once again recognize that the trial court gave the jury an extensive curative instruction that advised the jury to disregard the exhibit and all testimony about the prior conviction.  The court also asked the jury if any juror could not follow the instruction to disregard the information.  Moreover, we also point out that at trial the State adduced substantial evidence of appellant's guilt.  Here, appellant acknowledged that he used methamphetamine earlier that day, owned the red truck, drove with a suspended driver's license, permitted the vehicle search, owned the black cylinder found in the truck, and owned at least a portion of the methamphetamine in the cylinder.  The jury, sitting as the trier of fact, may choose to believe or disbelieve the testimony of any witness who offers testimony.  Apparently, in the instant case the jury opted to find appellant's testimony not credible.  This is within the jury's

purview.  Here, we cannot conclude that appellant suffered

prejudice.  Thus, based upon the foregoing reasons, we overrule

appellant's third assignment of error.

{¶86} Accordingly, we hereby affirm the trial court's judgment.

JUDGMEN

T AFFIRMED.

ADAMS, 23CA1178

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                          Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.